108 N.J. Super. 149 (1969)
260 A.2d 255
D., PLAINTIFF,
v.
D., DEFENDANT.
Superior Court of New Jersey, Chancery Division  Morris County.
Decided December 17, 1969.
*151 Mr. Edward J. Farrell appeared for plaintiff (Messrs. Farrell, Curtis, Carlin & Davidson, attorneys).
Mr. Irving Youngelson appeared for defendant (Messrs. Youngelson & Youngelson, attorneys).
POLOW, J.J.D.R.C. (temporarily assigned).
In this divorce proceeding each party charges the other with extreme cruelty, each demand judgment dissolving the marriage and, of particular relevance on this motion, each seeks custody of their two children. In connection with his custody demand plaintiff husband moves before trial for leave to take the deposition of a physician and for an order directing the physician and Greystone Park State Hospital to produce for inspection and copying all medical records relating to defendant. Such evidence, reasons plaintiff, is indispensable to an adjudication of the fitness of defendant as a mother and therefore essential to a proper determination of the custody issue in the best interests of the children.
Defendant invokes the patient-physician privilege and insists that by statute she has absolute protection against disclosure of medical information concerning her hospitalization. The parties have consented to an order requiring both to submit to a psychiatric evaluation by a phychiatrist appointed *152 by the court in connection with the ultimate determination of the custody issue.
Plaintiff argues that he is entitled to inquire into and inspect all available records and information concerning the commitment of his wife to Greystone Park State Hospital in August 1967; that such medical and psychiatric information has a direct bearing upon the custody issue, and that the patient-physician privilege is not applicable in these circumstances.
The patient-physician privilege was first created in New Jersey by enactment of N.J.S.A. 2A:84A-22.1 et seq., effective July 19, 1968. Although plaintiff concedes that there are no decisions in this State construing the effect of the statute in custody proceedings, he relies on a New York decision, People ex rel. Chitty v. Fitzgerald, 40 Misc.2d 966, 244 N.Y.S.2d 441 (Sup. Ct. 1963). The husband in Fitzgerald had been hospitalized for mental illness. The court concluded that "in the exercise of the court's inherent power to do what is best to protect the welfare of the infant, the right of the petitioner to invoke the patient-physician privilege must yield to the paramount rights of the infant." The hospital report was not made part of the record in that proceeding but, instead, the judge himself examined the hospital record to determine its relevancy in the custody controversy.
I am convinced that the same procedure is appropriate here and should be the next step in the present dispute. The hospital record may be subpoenaed by plaintiff to be inspected by the court. In the event any portion of the record should be relied upon by the court in resolving the custody issue, the specific factors considered must be disclosed to the parties. The parties are entitled to know all of the elements which enter into a custody determination if they are to have a reasonable opportunity to contradict or rebut any portion thereof. See Callen v. Gill, 7 N.J. 312, 320 (1951). To this limited extent I find that there are fundamental policy considerations which dictate the need *153 for flexibility in applying the technical rules of evidence in an effort to reach the proper result where the issue involves custody and the welfare of infant children.
Plaintiff, however, seeks more than just inspection of records by the court and argues that the patient-physician privilege is not available at all in commitment proceedings. He is, of course, absolutely correct, as expressly stated in the statute itself. But this is not a commitment proceeding and I do not read the statute to exempt from its provisions all records of hospitalization which result from commitment proceedings where there is an attempt to use such records in subsequent unrelated litigation. The statute provides that the privilege may not be invoked to prevent the introduction of a communication by patient to physician within an action to commit the patient to a mental hospital. It does not remove the hospital record itself from the operation of the statutory privilege, although the hospitalization may in fact have come about through commitment proceedings.
Since our courts have specifically held hospital records to be within the purview of the statutory privilege, Osterman v. Ehrenworth, 106 N.J. Super. 515 (Law Div. 1969), and Unick v. Kessler Memorial Hospital, 107 N.J. Super. 121 (Law Div. 1969), plaintiff's application to inspect and copy the records at this time will be denied except to the limited extent outlined above.
Plaintiff also seeks an order permitting pretrial deposition of one of the committing physicians. Presumably, plaintiff would probe into the reasons for the commitment, the mental problem suffered by defendant and the relationship they may bear to the welfare of the children and the fitness of defendant as a parent.
Defendant opposes such an order and again relies on the patient-physician privilege provided by statute. Without considering the other difficult problems involved in eliciting expert testimony by deposition, cf. Myers v. St. Francis Hospital, 91 N.J. Super. 377 (App. Div. 1966), I am satisfied that the privilege is available to defendant in the present *154 circumstances. I find no exception in the statute based upon the marital relationship between the parties nor based on the fact that the testimony sought concerns a prior mental hospital commitment.
The policy considerations do not differ in this context from those stated above in connection with hospital records. The court's primary concern is the welfare of infant children, and the need to resolve this issue in their best interests may outweigh policy reasons for certain technical rules of evidence where the court in its discretion can find no acceptable alternative and where the information sought is indispensable to a proper determination of the custody issue. Accordingly, should the defending parent refuse to submit to psychiatric evaluation as required by the court, we would be unable to evaluate the fitness of that parent in terms of possible mental illness, although we know that there has been a recent commitment to a mental hospital. Under such circumstances, the court may well be compelled to conclude that there is no alternative to permitting discovery of medical evidence notwithstanding the privilege. The privilege is intended for the protection of the patient herself  in this case, defendant. Schechet v. Kesten, 372 Mich. 346, 126 N.W.2d 718 (Mich. Sup. Ct. 1964), State v. Sullivan, 60 Wash.2d 214, 373 P.2d 474 (Wash. Sup. Ct. 1962), 8 Wigmore, Evidence, § 2386 (McNaughton rev. 1961). Any interference with accomplishment of the purpose of the order of the court to obtain psychiatric information, by way of defendant's failure to permit or cooperate with the proposed evaluation, could bar her right to invoke the statutory privilege, in order to protect the paramount interest of the court  the welfare of the infant children.
Hopefully, we are not here faced with that dilemma. Defendant has agreed to submit to a psychiatric evaluation and the court has been called upon to appoint the psychiatrist. It is the present mental and physical condition of the parties which is of primary concern, and this the proposed evaluation will, we trust, provide.
*155 Plaintiff next argues that defendant, by instituting a malpractice suit recently against the same physician and others, based upon the commitment which he signed, has thereby effectively waived her privilege. Although the privilege in this State is so recent that we find no reported decisional authority, there is adequate support in other jurisdictions for the proposition that testimony elicited or provided by the patient concerning the confidential communication terminates the privilege. Munzer v. Swedish American Line, 35 F. Supp. 493 (S.D.N.Y. 1940); Chambers v. Tobin, 118 F. Supp. 555 (D.D.C. 1954); Ramey v. Mets, 3 Ohio App.2d 329, 210 N.E.2d 449 (Ohio Ct. App. 1964); see also 114 A.L.R. 798 (1938) and 21 A.L.R.3d 912 (1968). The language of our statute, in any event, is clear and unequivocal in that the privilege is waived "if the judge finds that * * * a holder of the privilege has caused the physician * * * to testify in any action * * *." (N.J.S.A. 2A:84A-22.7). If, in fact, the suit filed by defendant against the doctor reaches a stage where testimony is obtained by her from the doctor, or given by her as the patient, the privilege will have been terminated at that time.
That stage has not yet been reached. There has been no such testimony as of this time. Should such a waiver in fact have been accomplished before trial, there would still be no absolute right to pretrial deposition of the physician. Although the newly enacted revision of the rules liberalizes discovery to some extent in matrimonial causes, R. 4:79-5 limits discovery as of right to interrogatories to parties. Other types of pretrial discovery are still available only with leave of court for good cause shown. See Ritt v. Ritt, 52 N.J. 177 (1968). Here again, I would consider defendant's cooperation in the psychiatric evaluation ordered by the court as persuasive in determining the existence of "good cause." If defendant shall fail or refuse to cooperate in the evaluation, "good cause" may well then be present to justify leave for further discovery. On the other hand, the kind of cooperation indicated here by defendant would *156 substantially eliminate cause for further discovery in this area without regard to the existence or nonexistence of the patient-physician privilege.
For the reasons stated, plaintiff's motion for discovery by way of production and copying of medical and hospital records and by way of deposing the physician will be denied, except that plaintiff may subpoena the hospital records for inspection by the court in accordance with this opinion.
I will appoint a psychiatrist to examine both parties and to provide a psychiatric evaluation to the court. An order may be submitted accordingly, which should also direct a custody investigation by the Morris County Probation Department pursuant to R. 4:79-8.