[No. 8992–7–I. Division One. June 1, 1981.]

*In the Matter of the Welfare of*
GARY GENE DODGE.

*Dean Sargent,* for appellant.

*Patrick A. Geraghty* and *Frederick Rogovy,* for respondent.

RINGOLD, A.C.J.—This is an appeal from an order permanently depriving Sharon Dodge of parental rights in her son, Gary Gene Dodge. We affirm.

Shortly before Gary's birth, Ms. Dodge was referred to the Children's Protective Services of the Department of

Social and Health Services (DSHS) by a social worker at Harborview Medical Center to ensure that she and the baby would have support services. A social worker with Children's Protective Services developed a relationship with Ms. Dodge commencing approximately 1 week after the baby's birth.

Approximately 2 months later, the mother suffered a psychotic breakdown while at Harborview. On this occasion she hallucinated about her son, claiming he could read her thoughts, he wanted to die after he was born, someone wanted to "blow his brains out," and he wanted to fly out of their second floor apartment window and play with the birds. This breakdown resulted in Gary being taken from her by DSHS.

On April 6, 1979, an order was entered placing the child in shelter care under the supervision of DSHS, and another shelter care hearing order was entered on April 23, 1979. From April through July, Ms. Dodge received supervision by a homemaker and other services from DSHS in an attempt to strengthen her skills as a mother so the child could be returned to her care. On July 23, 1979, an order was entered finding the child to be dependent and placing him in the custody of Catholic Children's Services (later known as Catholic Community Services (CCS)). Ms. Dodge was allowed semimonthly visits with the child.

CCS petitioned for permanent deprivation of parental rights and a hearing was held on May 7, 1980. Ms. Dodge's DSHS social worker testified that during the course of her relationship with the mother and Gary, Ms. Dodge exhibited "delusional thoughts" on several occasions. The social worker also testified that she had seen Ms. Dodge do something harmful to Gary on two occasions.

Dr. John Pro, a psychiatrist who first came into contact with Ms. Dodge in 1978, testified that he had diagnosed her as being a paranoid schizophrenic. In his opinion there was a probability that she would harm her son, she would need indefinite psychiatric care, her type of mental disease was rarely cured, and it would be better for her and for her

child that a deprivation order be granted. He also said that Ms. Dodge did not regularly attend the life skills program which he had recommended.

Based upon this evidence, the court found that "[b]y June of 1979, it was apparent that . . . [Ms.] Dodge was still not able to care for [her son,]" that Ms. "Dodge will not be able in the reasonably foreseeable future, if ever, to provide [her son] with the stability and permanence he requires," that "there is little likelihood that her condition can be remedied so that [her son] can be returned to her," and that "it would be in the best interests of the child that the relationship between he [sic] and his parents be terminated." Findings of fact Nos. 6, 9, 11, and 12.

Ms. Dodge appeals from the order of permanent deprivation. The primary issue presented on appeal is whether the physician–patient privilege is applicable to require rejection of Dr. Pro's testimony.

RELEVANT STATUTES

RCW 13.34.030 gives the following definition of "Dependent child":

(2) "Dependent child" means any child:
. . .
(b) Who is abused or neglected as defined in chapter 26.44 RCW; or
(c) Who has no parent, guardian, or custodian willing and capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.

RCW 26.44.020 defines "Child abuse or neglect":

(12) "Child abuse or neglect" shall mean the injury . . . or negligent treatment or maltreatment of a child by a person who is legally responsible for the child's welfare under circumstances which indicate that the child's health, welfare and safety is harmed thereby. An abused child is a child who has been subjected to child abuse or neglect as defined herein.

RCW 13.34.180 states the requirements for permanent deprivation:

A petition seeking termination of a parent and child relationship may be filed in juvenile court. Such petition shall conform to the requirements of RCW 13.34.040 as now or hereafter amended and shall allege:

(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and

. . .

(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home . . .

RCW 13.34.190 provides:

After hearings pursuant to RCW 13.34.110, the court may enter an order terminating all parental rights to a child if the court finds that:

(1)(a) The allegations contained in the petition as provided in RCW 13.34.180(1) through (6) are established by clear, cogent, and convincing evidence; or (b) RCW 13.34.180(3) may be waived because the allegations under RCW 13.34.180(1), (2), (4), (5), and (6) are established beyond a reasonable doubt; or (c) the allegation under RCW 13.34.180(7) is established beyond a reasonable doubt; an

(2) Such an order is in the best interests of the child.

The physician–patient privilege is established in RCW 5.60.060:

(4) A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient, *but this exception shall not apply in any judicial proceeding regarding a child's injuries, neglect or sexual abuse, or the cause thereof.*

(Italics ours.)

PHYSICIAN–PATIENT PRIVILEGE

Ms. Dodge contends that Dr. John Pro's testimony and the diagnostic evaluation report prepared by him are within the physician–patient privilege and therefore were erroneously admitted at the hearing. CCS responds that the statutory physician–patient privilege does not apply here because of the exception "in any judicial proceeding regarding a child's injuries, neglect or sexual abuse . . ."

Ms. Dodge initially argues that she did not waive the privilege when she signed a consent to release medical records. In reviewing the record, it does not appear that the trial court based its decision to admit the testimony of Dr. Pro on the ground that Ms. Dodge waived the privilege, nor does CCS attempt to rely on waiver to support the admission of the testimony and report. A copy of the release is not contained in the record and the circumstances surrounding the release are not apparent from the record.

No Washington cases have been called to our attention which interpret this exception in the context of a permanent deprivation proceeding. In *State v. Fagalde,* 85 Wn.2d 730, 736, 539 P.2d 86 (1975), the court held that in an action concerning child abuse the privilege did not exist:

> Thus, we cannot accept the appellant's theory that confidential communications between the perpetrator and a psychologist, or a doctor, or a mental health center employee, are protected from disclosure and privileged in a judicial proceeding, according to the terms of the applicable statutes. Such protection might well be deemed to be in the public interest. But it is evident that, in its recent enactments, the legislature has attached greater importance to the reporting of incidents of child abuse and the prosecution of perpetrators than to counseling and treatment of persons whose mental or emotional problems cause them to inflict such abuse.

*Accord, State v. Anderson,* 94 Wn.2d 176, 616 P.2d 612 (1980). Courts in other jurisdictions have held that in custody proceedings the parent's "right to invoke the patient–physician privilege must yield to the paramount rights of the infant." *People ex rel. Chitty v. Fitzgerald,* 40 Misc. 2d

966, 244 N.Y.S.2d 441 (1963). *See also D. v. D.,* 108 N.J. Super. 149, 260 A.2d 255 (1969). The reason for this exception to the physician–patient privilege is that "there are fundamental policy considerations which dictate the need for flexibility in applying the technical rules of evidence in an effort to reach the proper result where the issue involves custody and the welfare of infant children." *D. v. D., supra* at 152–53. The Nebraska Supreme Court recognized these considerations in interpreting a statute (since repealed) which provided an exception to the physician–patient privilege in proceedings "regarding injuries to children." In *In re Norwood,* 194 Neb. 595, 234 N.W.2d 601 (1975), the court held that the exception was intended to be effective "when the mental condition of a parent is in issue" in a deprivation proceeding. Accordingly, the Nebraska court interpreted broadly the statutory term "injuries" and held that the evidence of two psychiatrists who had treated the parents was properly admitted.

We conclude that the same considerations compel a broad reading of the statutory exception to the physician–patient privilege found in RCW 5.60.060(4), so as to encompass permanent deprivation hearings such as the one involved here. "As a statute in derogation of common law, RCW 5.60.060(4) is to be construed strictly." *Department of Social & Health Servs. v. Latta,* 92 Wn.2d 812, 819, 601 P.2d 520 (1979). Consequently, statutory exceptions to the privilege should be read more broadly than the privilege itself.[1] We discern a legislative intent in providing for an

---

[1]*See Tarasoff v. Regents of Univ. of Cal.,* 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976), which held that a psychotherapist who is aware that his patient poses a serious danger of death or serious bodily harm to a third person is under a civil duty to warn the third person of the danger or otherwise exercise reasonable care for the protection of that third person. In doing so, the court did not create a nonstatutory exception to California's physician–patient privilege; rather, its holding was based in part on the legislatively created exception to the privilege where the psychotherapist has reasonable cause to believe the patient to be dangerous to himself or the person or property of another and disclosure is necessary to prevent the threatened danger. *Lemelle v. Superior Court,* 77 Cal. App. 3d 148, 143 Cal. Rptr. 450 (1978).

exception to the physician–patient privilege to permit the court in proceedings affecting children to have complete information in order to make a decision concerning the best interests of the child. A court cannot determine the best interests of the child without of necessity considering whether the parent has neglected the child.

Ms. Dodge argues that the exception to the physician–patient privilege is not applicable here because the child was not found to be dependent on the ground that he was "abused or neglected" as defined in RCW 26.44 pursuant to RCW 13.34.030(2)(b) but was instead found to be dependent under RCW 13.34.030(2)(c), which states "that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." In essence, she argues that because there was no finding of dependency based upon abuse or neglect the deprivation proceeding was not one "regarding a child's injuries, neglect or sexual abuse" for purposes of the exception to the physician–patient privilege.

This argument is not persuasive. In determining whether to permanently deprive a parent of all parental rights, dependency is only one factor to be considered. *See* RCW 13.34.180. The primary concern in a permanent deprivation proceeding is the best interests of the child, RCW 13.34.190(2); *In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973). In determining the best interests of the child, a court must of necessity consider "injuries or neglect" as those terms are ordinarily defined. *See In re Aschauer,* 93 Wn.2d 689, 611 P.2d 1245 (1980); *In re Frederiksen,* 25 Wn. App. 726, 610 P.2d 371 (1979). Similarly, the terms "injury" or "neglect" as found in the physician–patient privilege exception are not limited by the statutory definitions found in RCW 26.44, and should therefore be given their ordinary meanings. Since a permanent deprivation proceeding is clearly concerned with whether the parent neglected the child, it is a "judicial proceeding regarding a child's injuries [or] neglect" for purposes of RCW 5.60.060. Implicit in the order of dependency of July 23, 1979, pur-

suant to RCW 13.34.030(2)(c) is consideration of the parental contribution to the child's psychological development. Failure of a parent to provide emotional nurturing, stability and permanence can be as harmful to a child's well being as physical abuse, or failure to provide food, shelter, and clothing. Such failure would constitute neglect whether resulting in physical or emotional harm to the child. We hold that the exception to the physician–patient privilege should apply to a permanent deprivation proceeding regardless of whether the petition alleges that the child is abused or neglected for purposes of the child abuse statute, RCW 26.44.020(12), or dependency has been established under RCW 13.34.030(2)(b) or (2)(c).

## HEARSAY

Ms. Dodge contends that Dr. Pro's psychiatric diagnostic evaluation report was erroneously admitted because it was hearsay. This contention is not raised as an issue following assignments of error Nos. 1 and 2, and is not fully argued in the brief. In any event, any error which the trial court may have made in admitting the report over Ms. Dodge's hearsay objection was harmless. Dr. Pro testified independently as to the findings and recommendations of the report, and this testimony was not hearsay. ER 801(c).

## FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

Ms. Dodge contends that there is insufficient evidence to support the findings of fact. The trial court found that "by June of 1979, it was apparent that . . . [Ms.] Dodge was still not able to care for [her son] . . .," finding of fact No. 6, and that Ms. "Dodge will not be able in the reasonably foreseeable future, if ever, to provide [her son] with the stability and permanence he requires . . ." Finding of fact No. 9. The trial court went on to find "[t]hat it would be in the best interests of the child that the relationship between he [sic] and his parents be terminated." Finding of fact No. 12.

Ms. Dodge also argues that the trial court's conclusions

of law are erroneous, apparently on the basis that they were not supported by the evidence. Conclusion of law No. 2 states that "[t]he allegations of the petition filed in this cause have been established by clear, cogent, and convincing evidence . . .," and conclusion of law No. 3 states that "the parental rights of . . . [Ms.] Dodge should be terminated."

 This court does not act as a fact finder.

> As an appellate tribunal, we are not entitled to weigh either the evidence or the credibility of witnesses even though we may disagree with the trial court in either regard. The trial court has the witnesses before it and is able to observe them and their demeanor upon the witness stand. It is more capable of resolving questions touching upon both weight and credibility than we are.

*In re Sego, supra* at 739–40. *See also In re Kier,* 21 Wn. App. 836, 587 P.2d 592 (1978). In *Hollingbery v. Dunn,* 68 Wn.2d 75, 82, 411 P.2d 431 (1966), the court commented on the function of an appellate court in reviewing evidence.

> Our function begins and ends with ascertaining whether the challenged finding of fact, as entered by the trial court, is supported by substantial evidence and, if so, whether the findings as a whole sustain the challenged conclusion of Law.

There is substantial evidence to support the trial court's findings. The trial court's finding that Ms. Dodge was not able to care for her son is evidenced by the agreed order of dependency dated July 23, 1979, concluding that he was dependent pursuant to RCW 13.34.030(2)(c), which provides that the child "has no parent . . . capable of adequately caring for the child". The testimony of the DSHS social worker and homemaker also provides substantial evidence to sustain the finding.

The finding that Ms. Dodge will not be able to provide her son with the stability and permanence that he requires is supported by Dr. Pro's testimony and her own testimony that she would relinquish the child for adoption should she marry someone who didn't want him.

Dr. Pro's testimony also establishes that there is little

likelihood that Ms. Dodge's mental condition can be remedied.

The trial court in evaluating all the testimony made the crucial determination by properly applying "the best interest of the child" test and concluded that the parental relationship be terminated. In *In re Aschauer, supra* at 694, the Supreme Court sustained a parental deprivation on less conclusive psychiatric evidence:

> The mother, while she undoubtedly loves the children also and desires to have them with her, has been found, upon substantial evidence, to be likewise incapable of nurturing them. As the trial court found, she is unable to cope with her own problems, much less those of two retarded children. Whether her condition can best be described as schizophrenic, as the trial court found, or can better be described in other diagnostic terms, the fact remains that she lacks the necessary capacity for giving parental care. The evidence was also clear that the prospects for correction of her problems in the near future are very poor, if they exist at all.

The trial court found upon substantial evidence that the requisite standard of proof had been met, and the trial court did not err in ordering that the parental rights of Ms. Dodge be terminated.

Affirmed.

WILLIAMS and CALLOW, JJ., concur.