[No. 47459-6-I. Division One. December 31, 2001.]

*In the Matter of the Interest of* J.F.
BARBARA HAMILTON, *Appellant*, v. THE DEPARTMENT OF SOCIAL
AND HEALTH SERVICES, *Respondent*.

*Oliver R. Davis* (of *Washington Appellate Project*), for appellant.

*Christine O. Gregoire, Attorney General*, and *Melissa L. Nelson, Assistant*, for respondent.

KENNEDY, J. — Barbara Hamilton appeals the juvenile court's order declaring her nine-year-old daughter J.F. to be a dependent child. Hamilton contends that the court erred in concluding that the counselor-patient privilege provided

by RCW 18.19.180 does not apply in dependency proceedings, and by ordering the testimony of her counselors and the production of evidence from the clinic she attended. According to Hamilton, the State failed to produce sufficient admissible evidence to sustain a finding of dependency. The State correctly contends that the evidence was admissible under the subpoena exception to RCW 18.19.180 and under applicable case law, and that there is sufficient evidence to uphold the dependency order even without the challenged evidence. We affirm on these grounds and on an additional ground as well: The reporting requirements of chapter 26.44 RCW trump the counselor-patient privilege found in RCW 18.19.180, whether or not the counselor actually reported the neglect or abuse that is a basis for the dependency petition.

## I

The Division of Children & Family Services (DCFS) of the Department of Social and Health Services (DSHS) filed a dependency petition regarding Barbara Hamilton's nine-year-old daughter J.F. The State served Michelle Stach, Alice Hilton, and the records custodian at Whatcom Counseling and Psychiatric Clinic with subpoenas ordering them to testify in this case. Stach and Hilton had provided Hamilton and J.F. with counseling services in the recent past. At trial, Hamilton sought to have this evidence excluded on the ground that it violated her counselor-patient privilege granted in RCW 18.19.180.

The juvenile court concluded that the counselor-patient privilege does not apply in dependency proceedings, and admitted the evidence over Hamilton's objection. The court reasoned that "the best interest[] of the child outweighs the counselor/patient privilege where the fitness of the parent and the emotional or physical condition of the child are at issue." Report of Proceedings at 287-88.

■ The court found that J.F. was a dependent child pursuant to former RCW 13.34.030(5)(b) and (c).[1] The court found that the State had proved 8 out of 12 allegations in the dependency petition, and concluded that those facts established the child's dependency. The following findings supporting the order of dependency are unchallenged by Hamilton and are, therefore, verities on appeal. *In re Dependency of P.D.*, 58 Wn. App. 18, 30, 792 P.2d 159 (1990). These unchallenged findings form the factual background for this case.

Unchallenged Findings of Fact

1. It was reported to [the Whatcom County Sheriff's Office] WCSO on 6/14/00 that 8 year old [J.F.] had been sent by her mother, Barbara Hamilton, on a trip to California with the mother's boyfriend, a long haul truck driver. The driver, identified by WCSO as Joel Brian Mitchell, has an extensive criminal history including charges of assault, attempted robbery, stalking, and violations of court orders. Mr. Mitchell has been investigated by DCFS for physical abuse of other children. [J.F.] has had little previous contact with this man as she had been living with her aunt since he had moved into her mother's home about 2 months ago, after he was released from prison. The mother had allegedly met Mr. Mitchell through a personal advertisement in a newspaper.

2. In a conversation with worker Linda Conroy on 6/14, Ms. Hamilton said that she had allowed her daughter to go with Mr. Mitchell. She said that children could get molested any where so she didn't see that she was putting her child at risk; on the contrary she saw this as a "chance of a lifetime" for the child.

. . . .

_____

[1] " 'Dependent child' means any child who: . . . (b) Is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child; or (c) Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development."

4. [J.F.] was taken into protective custody by WCSO on 6/17/00 after being returned to Whatcom County by Mr. Mitchell.

5. On 6/19/00, in an interview with WCSO and CPS worker, the child stated that her mother said she could go with Brian to look at the truck. Once in the truck, her mother gave her a bag of clothing and they left. She said, "I didn't know we were going on a trip, I just thought we were going around the block." She said that she had met Mr. Mitchell only twice before. She said that he told her to call him dad as "people would call the cops and take me away" if they knew he was not her dad.

6. In July 1999 WCSO and the Department had investigated an incident of child sexual abuse concerning [J.F.] being sexually abused by a male friend of Ms. Hamilton, who Ms. Hamilton had met through a personal advertisement. That man was since charged with molestation of the child. At that time Ms. Hamilton was strongly advised by the Department not to put her child in any situations where she might be at risk of further harm by adult friends of the mother.

. . . .

10. DCFS has investigated 7 reports of abuse or neglect in this family since 1993. Two were founded for physical abuse by the child's father Kim Fletcher, and one was inconclusive. One allegation of sexual abuse by Mr. Fletcher was inconclusive. Allegations of emotional abuse were founded for both parents. One allegation of neglect was founded with respect to the mother and two others were inconclusive. Additionally there have been several concerns expressed for the child's safety as there are frequently many different people in and out of the home, and the family lifestyle is described as chaotic.

11. The father, Kim Fletcher, has not had direct contact with the child for more than 3 years, following a no contact order issued after he was charged with assault of Ms. Hamilton. There is no current parenting plan giving him visitation.

Clerk's Papers at 104-05.

The court made 22 additional findings of fact, most of which are unchallenged by Hamilton. The additional unchallenged findings are summarized as follows:

J.F. was first sexually molested when she was approximately two to three years old. She was molested again in 1999 by Mr. Nielsen, a man whom Barbara Hamilton met through a personal ad. At the time of the truck trip to California, Hamilton knew that J.F. had been molested at least twice, that J.F. had no sense of boundaries with strangers, and that J.F. was impulsive and had acted out sexually in the past. Hamilton had also been advised in conversations with law enforcement officers and caseworkers of the inappropriateness and inherent risk of exposing her daughter to men whom she had met through personal ads and whom her daughter barely knew. Hamilton was also fully aware of Mitchell's extensive criminal history at the time of the California road trip, and that Mitchell had a restraining order prohibiting him from seeing his own children.

Child Protective Services (CPS) investigator Linda Conroy testified that she discussed the California road trip with Hamilton, and that Hamilton professed not to understand why anyone was concerned. According to Ms. Conroy, Ms. Hamilton did not appear to see the connection between the circumstances of J.F.'s previous molestations and letting J.F. go on a road trip with Mitchell, a man she barely knew. Hamilton also admitted that she had made poor choices with men because she had been molested as a child by her own father. Despite this fact, Hamilton allowed her father to reside in her home during the last few months of 1999, and to have unsupervised access to J.F.

Over the two years prior to trial, witnesses had observed Hamilton's residence to be cluttered and unkempt, with

unwashed dishes in the sink, fecal matter remaining in the garage for days at a time, garbage on the floor, filthy carpets, and dog feces in the kitchen. Hamilton had allowed various people to continue to reside in or visit the home despite knowledge that they were engaging in behavior such as sexual intercourse on the living room couch and smoking marijuana. Hamilton admitted that "those kids took me over and it took me two months to get them out." *Id.* at 17. Hamilton had hit J.F. on the back, buttocks, and legs with a riding crop on more than one occasion, leaving a visible mark at least once. Hamilton had also verbally abused J.F. by calling her "stupid" and "dumb." Hamilton said that her son Nathan also hit J.F. for disciplinary purposes. J.F. had missed a lot of school due to illness and had failed to do her homework.

Hamilton had been diagnosed as suffering from chronic depression and received medication for this condition. Ms. Andree Marcus, a case manager at Blaine Family Services Center, worked with Hamilton for three months in 1999, following a referral from CPS concerning physical abuse of J.F., unsanitary conditions in the home, and Hamilton's chronic depression. Marcus felt that Hamilton did not see the condition of the house or the presence of so many roommates as affecting J.F. in any way.

Despite intensive services and counseling provided to Hamilton and J.F. over the last few years leading up to the trial, the only improvement was that the number of people in and out of the home had apparently been reduced and that the home was apparently in a more sanitary condition than in the past.

Finally, Hamilton intimidated three witnesses in the case and threatened to kill any witnesses who testified against her.

Challenged Findings of Fact

Hamilton challenges the following findings of fact on the ground that they are based on evidence admitted in violation of her counselor-patient privilege.

9. A counselor at Whatcom Counseling and Psychiatric Clinic, who has worked with the family for several years, stated to DCFS on 6/17[00] that she strongly recommends that Ms. Hamilton agree to the child living with the aunt for the next year.

Clerk's Papers at 105.

15. Alice Hilton, a Certified Mental Health Counselor, began working with Barbara Hamilton in September 1999. In April of [2000], Barbara Hamilton reported to Ms. Hilton that she was having suicidal thoughts but that she would not follow through on them because of her child. Barbara Hamilton was taking antidepressants during the time that Ms. Hilton was working with Barbara Hamilton. In February of [2000], Barbara Hamilton reported that her depression would not allow her to get started, that she wasn't following through with chores or consequences with her daughter. On April 26 of [2000], Barbara Hamilton admitted to this witness that she was attracted to "bad-boys" such as her "biker fuck buddy." On May 24, Barbara Hamilton admitted that her boyfriend lied and used her for sex. On June 17, Ms. Hamilton called the crisis line and stated "if I don't get my kid back I will kill myself."

16. Michelle Stach, a child case manager for Whatcom Counseling and Psychiatric Clinic worked with Barbara Hamilton and [J.F.] between March 1996 and February 1997, and again between February 1998 and June of [2000]. Focus of this work was on safety for the child and issues concerning the child's impulsivity and running off with strangers. At the conclusion of the first treatment period parenting services were recommended. The second session dealt with [J.F.] following directions at home and making safe choices. By February of 1998, [J.F.] had regressed, was engaging in

sexually suggestive behavior and was having problems with personal boundaries. On September 2, 1998, Ms. Hamilton reported to this witness that [J.F.] continued to run away. In October 1998 Ms. Hamilton reported feeling overwhelmed by the situation in her home and with her child.

17. In December 1998, Ms. Stach visited Ms. Hamilton's home, observed several people there and reported that the house was chaotic. At that time [J.F.] was staying with her aunt and uncle for respite [for the mother]. On January 26, 1999, Ms. Hamilton indicated to Michelle Stach that the aunt and uncle were moving to eastern Washington. Ms. Stach and Ms. Hamilton discussed [J.F.] living with the aunt and uncle for the school year and the need for Ms. Hamilton to re-assert herself as the parent and to seek out alternative respite to make up for the fact that the aunt and uncle would be moving out of the area.

18. On March 23, 1999, Ms. Hamilton reported to Ms. Stach that [J.F.] was still running off and that there were safety and boundary issues which were unresolved. According to Ms. Stach, little progress had been made. In April of 1999, Barbara reported difficulty dealing with [J.F.] due to her own depression. On October 5, 1999, this witness met with [J.F.] and reported that little progress had been made with the issues concerning [J.F.].

19. On January 11, 2000, Barbara Hamilton reported that there was still a lot of chaos over the last month with the roommates and reported that these roommates were practicing witchcraft. In March of [2000] it was reported by Ms. Hamilton that the aunt and uncle were co-parenting to assist the mother with the issues she was trying to deal with regarding her child.

728

 

20.	On June 13 of [2000] Ms. Hamilton reported to . . . Ms. Stach that [J.F.] was on a road trip with a man she had just met and was off to California.

Clerk's Papers at 18-19.

## II

 Questions concerning the admissibility of evidence in a dependency proceeding will not be disturbed on appeal absent an abuse of discretion. *In re Dependency of P.D.*, 58 Wn. App. 18, 27, 792 P.2d 159 (1990). Issues of statutory construction are reviewed de novo. *Clauson v. Dep't of Labor & Indus.*, 130 Wn.2d 580, 583, 925 P.2d 624 (1996). The appellate court must affirm the trial court's determination of dependency if substantial evidence supports its finding that the State has met its burden of proof. *In re Welfare of S.V.B.*, 75 Wn. App. 762, 768, 880 P.2d 80 (1994).

 Parents have a fundamental liberty interest in the care and custody of their minor children. *In re Welfare of A.J.R.*, 78 Wn. App. 222, 229, 896 P.2d 1298 (1995). However, the State has an equally compelling interest in protecting the physical, mental, and emotional health of children. *In re Dependency of H.W.*, 70 Wn. App. 552, 555, 854 P.2d 1100 (1993). Accordingly, dependency proceedings under chapter 13.34 RCW are designed to protect children from abuse and neglect, help parents alleviate problems, and reunite families if appropriate. *In re Welfare of Key*, 119 Wn.2d 600, 609, 836 P.2d 200 (1992). In cases involving child abuse or neglect, courts are particularly reluctant to keep relevant information from the trier of fact. *In re Welfare of Coverdell*, 39 Wn. App. 887, 892, 696 P.2d 1241 (1984). A trial court has broad discretion in dependency and termination proceedings to receive and evaluate evidence in light of a child's best interest. *In re Dependency of C.B.*, 61 Wn. App. 280, 287, 810 P.2d 518 (1991).

■ Former RCW 18.19.180 (2000)[2] sets forth a statutory privilege for counselor-patient communications and provides six exceptions:

> An individual registered or certified under this chapter shall not disclose the written acknowledgment of the disclosure statement pursuant to RCW 18.19.060 nor any information acquired from persons consulting the individual in a professional capacity when that information was necessary to enable the individual to render professional services to those persons except:
>
> (1) With the written consent of that person or, in the case of death or disability, the person's personal representative, other person authorized to sue, or the beneficiary of an insurance policy on the person's life, health, or physical condition;
>
> (2) That a person registered or certified under this chapter is not required to treat as confidential a communication that reveals the contemplation or commission of a crime or harmful act;
>
> (3) If the person is a minor, and the information acquired by the person registered or certified under this chapter indicates that the minor was the victim or subject of a crime, the person registered or certified may testify fully upon any examination, trial, or other proceeding in which the commission of the crime is the subject of the inquiry;
>
> (4) If the person waives the privilege by bringing charges against the person registered or certified under this chapter;
>
> (5) In response to a subpoena from a court of law or the secretary. The secretary may subpoena only records related to a complaint or report under chapter 18.130 RCW; or
>
> (6) As required under chapter 26.44 RCW.

Hamilton argues that the juvenile court erred in admitting testimony in violation of the counselor-patient privilege because (1) nothing in former RCW 18.19.180 explicitly creates an exception for dependency proceedings, and (2) the court may not read into the statute an exception to the privilege having no basis in the plain language. The State

---

[2] Laws of 2001, ch. 251 changed licensing requirements for mental health counselors. It amended RCW 18.19.180 by eliminating the word "certified" from the statute.

correctly concedes that exceptions (1)-(4) are not applicable in this case, incorrectly concedes that exception (6) is not applicable, and contends that exception (5) applies explicitly because it authorizes registered or certified counselors to release otherwise confidential information "in response to a subpoena from a court of law[.]"

The juvenile court relied on several analogous cases in ruling that the counselor-patient privilege does not apply in dependency proceedings where the fitness of a parent and the welfare of a child are at issue: *In re Coverdell*, 39 Wn. App. 887 (hospital records admissible in dependency proceeding despite records confidentiality statute because public interest in full disclosure outweighs patient's interest in nondisclosure); *State v. Fagalde*, 85 Wn.2d 730, 539 P.2d 86 (1975) (chapter 26.44 RCW reporting requirements trump the psychologist-patient privilege); *In re Welfare of Dodge*, 29 Wn. App. 486, 628 P.2d 1343 (1981) (RCW 5.60.060(4) creates statutory exception to physician-patient privilege in cases of child abuse).

The trial court correctly relied on these analogous cases. Moreover, direct support for the ruling is found in the counselor-patient privilege statute itself. The court concluded that J.F. was dependent because she was "abused or neglected as defined in chapter 26.44 RCW."[3] Clerk's Papers at 104. The appellant does not challenge this conclusion. Under RCW 26.44.020(12), "abuse or neglect" means "the injury, sexual abuse, sexual exploitation, negligent treatment, or maltreatment of a child[.]" "Negligent treatment or maltreatment" is defined by the same statute as "an act or omission that evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to the child's health, welfare, and safety." RCW 26.44.020(15). The court also found that J.F. was dependent because she "[h]as no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of

---

[3] *See* RCW 13.34.030(5)(b) defining "dependent child" as one who is "abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child[.]"

substantial damage to the child's psychological or physical development." RCW 13.34.030(5)(c).

Here, the unchallenged findings of fact establish that Hamilton sent J.F., a child who had been the victim of two sexual assaults, who had no sense of boundaries with strangers, and who acted out sexually, on a long-haul trucking trip to California with a man the child barely knew—without even telling the child before she got into the truck that she was going on a long trip and not just around the block. It is uncontroverted that, after J.F. was sexually abused by a man whom Hamilton met through a personal ad, Hamilton's caseworkers strongly advised her not to put J.F. into any similar situations where she might be at risk of harm by Hamilton's friends. It is also uncontroverted that Hamilton was aware of Mitchell's extensive criminal history, including assault, protection order violations, extortion, and stalking, and knew that he was prohibited by court order from seeing his own children. The record also reflects that Hamilton met Mitchell in the same manner as she met the man who sexually assaulted J.F., by way of a personal ad. These unchallenged facts constitute sufficient evidence to sustain the court's finding that Hamilton evidenced a serious disregard of consequences of such magnitude as to constitute a clear and present danger to J.F.'s health, welfare and safety, and this is quite aside from the testimony of Hamilton's counselors.

There is no evidence that J.F. was physically harmed on the trip to California, but such evidence is not required to establish dependency. RCW 13.34.030(5) does not require evidence of actual harm, only "clear and present danger to the child's health, welfare and safety[.]" *In re Welfare of Frederiksen*, 25 Wn. App. 726, 733, 610 P.2d 371 (1979). Hamilton's conduct clearly met that standard.

We hold that the challenged testimony was admissible on two additional grounds. First, the mandatory reporting requirements of RCW 26.44.030[4] trump the

[4] RCW 26.44.030(1)(a) provides that "[w]hen any practitioner, county coroner or medical examiner, law enforcement officer, professional school personnel, regis-

statutory counselor-patient privilege. *State v. Ackerman*, 90 Wn. App. 477, 486, 953 P.2d 816 (1998). The *Ackerman* court noted that " 'in its recent enactments, the legislature has attached greater importance to the reporting of incidents of child abuse and the prosecution of perpetrators than to counseling and treatment of persons whose mental or emotional problems cause them to inflict such abuse.' " *Id.* (quoting *Fagalde*, 85 Wn.2d at 736). RCW 26.44.030 mandates reports for neglect as well as abuse, and it is clear that J.F. was neglected within the definition of RCW 26.44.020.[5] In her opening brief for this appeal, Hamilton states, without citation to the record, that her counselors did not report the California trip to the Whatcom County Sheriff's Office or CPS.[6] Assuming this to be true, it is irrelevant. Professionals who are required to report neglect or abuse under RCW 26.44.030 can properly be called to testify about the neglect or abuse, whether or not they made the initial report as required by law. Under the plain language of RCW 18.19.180(6), information that is required to be reported under chapter 26.44 RCW is not privileged. We decline to accept the State's concession that the statutory exception of RCW 18.19.180(6) does not apply in this case. Erroneous concessions of law are not binding upon the court. *State v. Knighten*, 109 Wn.2d 896, 902, 748 P.2d 1118 (1988).

---

tered or licensed nurse, social service counselor, psychologist, pharmacist, licensed or certified child care providers or their employees, employee of the department, juvenile probation officer, placement and liaison specialist, responsible living skills program staff, HOPE center staff, or state family and children's ombudsman or any volunteer in the ombudsman's office has reasonable cause to believe that a child has suffered abuse or neglect, he or she shall report such incident, or cause a report to be made, to the proper law enforcement agency or to the department as provided in RCW 26.44.040."

[5] RCW 26.44.020(12) defines "abuse or neglect" as "the injury, sexual abuse, sexual exploitation, negligent treatment, or maltreatment of a child by any person under circumstances which indicate that the child's health, welfare, and safety is harmed, excluding conduct permitted under RCW 9A.16.100. An abused child is a child who has been subjected to child abuse or neglect as defined in this section."

[6] The record reflects that one of Hamilton's counselors learned about the California trip on June 13, 2000, and that the report to the Sheriff's Office was made the following day.

 We do agree with the State that the counselor-patient privilege can be overcome by the issuance of a subpoena in a legal proceeding pursuant to the statutory exception in RCW 18.19.180(5). Statutes granting privileges of confidentiality are in derogation of common law and are strictly construed. *Dep't of Soc. & Health Servs. v. Latta*, 92 Wn.2d 812, 819, 601 P.2d 520 (1979). A corollary to this principle is that statutory exceptions to the privilege are read more broadly than the privilege itself. *In re Welfare of Dodge*, 29 Wn. App. 486, 492, 628 P.2d 1343 (1981). Under CR 45,[7] there is no substantive difference between a subpoena issued by the court and one issued by an attorney of record of the party in whose behalf the witness is to appear.

We reject Hamilton's claim that "some independent criteria under the statute must justify disclosure and support the subpoena." Appellant's Opening Br. at 11. Hamilton cites no authority for this position. Nothing in the statute itself supports the claim. But even if there were such a requirement, it is satisfied in this case because the statute also excepts from the privilege information that is subject to disclosure under RCW 26.44.030.

We also note that none of the other statutory privileges in place at the time chapter 18.19 RCW was enacted contain a blanket exception for subpoenas.[8] Hamilton's proposed construction of the statutory privilege would raise the counselor-patient privilege to a higher level than the physician-patient privilege, the psychologist-patient privilege, and the clergy-penitent privilege. To the contrary, the blanket exception for subpoenaed information indicates that the Legislature did not intend for the counselor-patient privi-

---

[7] CR 45(a)(1) grants courts the authority to issue subpoenas, and provides that "such subpoena may be issued with like effect by the attorney of record of the party to the action in whose behalf the witness is required to appear, and the form of such subpoena in each case may be the same as when issued by the court except that it shall only be subscribed by the signature of such attorney."

[8] These include the attorney-client privilege, husband-wife privilege, clergy-penitent privilege, and physician-patient privilege, all codified at RCW 5.60.060; the psychologist-patient privilege of RCW 18.83.110; and the statute granting confidentiality to records at public and private mental health agencies, chapter 71.05 RCW.

734

lege to be stronger than these other privileges. If any hierarchical categorization of statutory privileges was intended, the blanket exception for subpoenaed information seemingly places the counselor-patient privilege among the weaker of such privileges, and not among the stronger.

In sum, the trial court's admission of the evidence here at issue is supported in both the analogous case law that the trial court relied upon, and in the plain language of subsections (5) and (6) of RCW 18.19.180. There was no abuse of discretion. The dependency order is affirmed.

WEBSTER and APPELWICK, JJ., concur.