2016 NOV 14  A:10: 59


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In the Matter of the Dependency of )<br>)<br>L.A.D., d.o.b. 02/18/13, )<br>)<br>Minor Child. )<br>)<br>WASHINGTON STATE DEPARTMENT )<br>OF SOCIAL & HEALTH SERVICES, )<br>)<br>Respondent, )<br>)<br>v. )<br>)<br>ASHLEY DUKELLIS, )<br>)<br>Appellant. )<br>_____) | No. 74457-7-I<br><br><br><br><br><br><br>UNPUBLISHED OPINION<br><br>FILED:  November 14, 2016 |

VERELLEN, C.J. — Ashley Dukellis appeals an order terminating her parental rights to her daughter, L.D.  She contends the court entered irreconcilable findings regarding L.D.'s best interest and that the resulting ambiguity undermines the termination order and violates her right to due process.  Because the challenged findings are reconcilable and the unchallenged findings support the remaining prerequisites for termination, we affirm.

FACTS

Ashley is the biological mother of three children, including a daughter, L.D., born in February 2013.[1] During her pregnancy with L.D., Ashley tested positive for marijuana and methamphetamine. When L.D. was born, both L.D. and Ashley tested positive for marijuana. A few days after L.D.'s birth, Ashley admitted using methamphetamine four times during her pregnancy.

Shortly thereafter, the Department of Social and Health Services filed a dependency petition. The court entered an order of dependency requiring Ashley to obtain a chemical dependency assessment, a psychological evaluation with a parenting component, mental health counseling and medication services, and domestic violence treatment services. The court also required Ashley to submit to random urinalysis testing, attend sober support meetings, and engage in parenting education.

In April 2014, the Department filed a petition to terminate Ashley's parental rights. Following a trial, the court granted the petition and entered the following pertinent findings of fact and conclusions of law:

II. Findings

. . . .

2.11 Since dependency was established, services ordered under RCW 13.34.130 have been offered or provided and all necessary services reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided. These services included the following as to the mother: [r]andom urinalysis, drug and alcohol evaluation, domestic violence victim's assessment, psychological and mental health assessment, mental health counseling, parenting assessment and parenting education.

---

[1] L.D.'s father relinquished his parental rights in January 2015.

a. The delay in the mother receiving mental health services after the retirement of one of her providers is not compelling to the court as a basis for asserting that all necessary services have not been provided because the mother has not substantially engaged in her other services which would be necessary in order for her to capably parent the child and adequately address her mental health.

b. There is no demonstration that the mother has engaged in substance abuse services, or demonstrated ongoing sobriety, where the significant remaining risk to the child is that substance abuse has incapacitated her in the past.

c. While not an issue of fault, due to her profound mental health issues, the mother demonstrates an inability to work with other people, including her treatment providers, her social workers, and even her own attorneys; it is difficult to see how the mother could capably parent the child without an ability to work with others such as teachers, daycare providers, doctor's therapists, and friends and family. Her mental health circumstances also subject her to debilitating panic attacks during which she is not able to care for the child.

d. The mother did not, or was not able to, engage in services necessary for her to assume care for the child despite those necessary services being offered.

2.12  Given the 32 months of services offered or provided, there is little likelihood that the conditions will be remedied so that the child could be returned to the parents in the near future. The mother is currently unfit to care for the child.

a. There is no indication that the mother's mental health issues can or will be remedied in the near future such that the mother will be able to care for the child on full-time parental basis.

b. There is no demonstration that the mother has remained clean and sober for any substantial period of time during the life of the dependency.

2.13  Continuation of the parent-child relationship clearly diminishes the child's prospect for early integration into a stable and permanent home. The consensus of expert opinion is that both the likelihood and the ease with which a child will bond into a new family setting are increased when the child is placed into a family setting at a younger age versus a more delayed placement. *The continuation of the status quo is not in the child's best interests and a resolution is needed as to who will be this child's permanent caretaker. The child's*

3

*needs for permanence and stability must, at this point in time, be accorded priority over the rights of the biological parents in order to foster the early integration of the child into a stable and permanent home as quickly as possible.*

a. Termination will facilitate the child's adoption into a stable and permanent home.

b. *While the court recognizes the limitations imposed by statute, and that the court cannot mandate continued contact between the mother and the child, the court does believe that continued visitation between the mother and the child is in the child's best interest.*

2.14 *Termination of the parent-child relationship is in the best interests of the child to allow adoption planning to begin and to foster the creation of a stable and permanent placement for the child.*

a. Termination will facilitate the child's adoption into a stable and permanent home.

2.15 *The mother is currently unfit to parent the child.* The mother was notified of her parental deficiencies. Because of these deficiencies, the mother was unable to understand and was incapable of providing for the child's emotional, physical, mental and developmental needs. *The mother is incapable of safely parenting the child.*

2.16 The child has 2 half siblings. The status of the child's relationship with any sibling with whom the child has a relationship is: the child has limited contact. The nature and extent of contact between the child and the siblings shall be: as determined by the caregivers or adoptive parent(s).

From the foregoing Findings of Fact, the court now makes and enters the following:

III. Conclusions of Law

. . . .

3.2 The foregoing Findings of Fact have been established by clear, cogent, and convincing evidence.

3.3 The requirements of RCW 13.34.180(a) - (f) and RCW 13.34.190(2) have been established by clear, cogent, and convincing evidence.

4

3.4 *The parent-child relationship* existing between [L.D.] and . . . her mother, Ashley Dukellis, *should be terminated* pursuant to RCW 13.34.190(1)(a) and (2).[2]

The court expressly incorporated its oral findings by reference. Those findings included the following:

And I do believe that there should be a specific finding to the effect that Ms. Dukellis's *relationship* with her child is in the child's best interest and should continue *in some form*.

That does not negate the Court's decision though that *termination of parental rights* should occur and is in the child's best interest. So there's a balancing there that will ultimately be left to the adoptive parents. And I'm making the finding because it's true in my view and because I think the adoptive parents should know it, *but it will not [a]ffect the outcome in this case*.[3]

Ashley appeals.

## DECISION

Parental rights are a fundamental liberty interest protected by the United States Constitution.[4] To terminate parental rights, the State must satisfy a two-step test. First, it must prove the following statutory elements by clear, cogent, and convincing[5] evidence

(a)  That the child has been found to be a dependent child;

(b)  That the court has entered a dispositional order pursuant to RCW 13.34.130;

---

[2] Clerk's Papers (CP) at 288-90 (emphasis added).

[3] Report of Proceedings (RP) (Dec. 4, 2015) at 373-74 (emphasis added).

[4] Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed.2d 599 (1982).

[5] "'Clear, cogent and convincing' means highly probable." In re Welfare of M.R.H., 145 Wn. App. 10, 24, 188 P.3d 510 (2008).

(c)    That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d)    That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e)    That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future [and]

. . . .

(f)    That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.[6]

If the trial court finds that the State has met its burden under RCW 13.34.180, it may terminate parental rights if it also finds by a preponderance of the evidence that termination is in the "best interests" of the child.[7] On review, unchallenged findings of fact are considered verities.[8] Challenged findings will be upheld "[i]f there is substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing."[9]

Ashley does not challenge the court's findings and conclusions under RCW 13.34.180(1)(a)-(f). Her sole contention on appeal is that the court's findings regarding L.D.'s best interests are ambiguous, that such findings do not satisfy

---

[6] RCW 13.34.180(1).

[7] RCW 13.34.190(1)(a)(iv), (b).

[8] In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001).

[9] In re Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980).

RCW 13.34.190(2), and that termination therefore denied her due process. She claims "[i]t is axiomatic that it cannot be in L.D.'s best interest to both terminate and maintain her parent-child relationship with Dukellis."[10] She concludes that the findings "are irreconcilable" and leave "the record ambiguous as to whether the trial court made the findings necessary for a valid termination order."[11] We disagree.

There is no ambiguity or inconsistency in the court's findings. The court found Ashley "unfit *to care for* the child,"[12] that L.D.'s best interests "are served by termination of *parental* rights,"[13] and that "*[t]he parent-child relationship* existing between [L.D.] and . . . her mother . . . should be terminated."[14] These findings that it is not in L.D.'s best interest to have a *parent-child relationship* with Ashley in no way conflict with the court's findings that it would be in L.D.'s best interest for Ashley to have a *nonparental* relationship with L.D. Nor is there any ambiguity as to whether the court found that termination of the *parent-child* relationship was in L.D.'s best interest. The court's written and oral findings regarding L.D.'s best interests clearly and unequivocally distinguish between a parental or nonparental relationship with Ashley. The court even acknowledged that it lacked authority to require ongoing contact between Ashley and L.D., but found that such contact through an open adoption would be in L.D.'s best interest. There is no ambiguity in the court's findings under RCW 13.34.190(2) and therefore, no denial of due process.

---

[10] Appellant's Br. at 14.

[11] Appellant's Br. at 9.

[12] CP at 289 (Finding of Fact 2.12) (emphasis added).

[13] RP (Nov. 5, 2015) at 347 (emphasis added).

[14] CP at 290 (Conclusion of Law 3.4) (emphasis added).

Affirmed.

WE CONCUR: