162 P.3d 1141 (2007)
In re the DEPENDENCY OF [T.H.], dob: 06/10/93, a minor.
State of Washington, Department of Social and Health Services, Respondent,
v.
Stella Hackney-Farias, Appellant.
Nos. 58453-7-I, 58575-4-I, 58799-4-I.
Court of Appeals of Washington, Division 1.
July 23, 2007.
Jennifer M. Winkler, Nielson, Broman & Koch, PLLC, Seattle, WA, for Appellant Stella Hackney-Farias.
Joel Jacob Delman, Attorney at Law, Trisha L. McArdle, Catherine Cruikshank, Office of the Atty. General, Seattle, WA, for Respondent DSHS.
Holly Jill Hermon, Northwest Defenders Association, Seattle, WA, for minor.
Kathryn Ann Barnhouse, King County CASA, Program, Kent, for CASA Guardian Ad Litem.

PART PUBLISHED OPINION
COLEMAN, J.
¶ 1 Stella Hackney-Farias appeals the termination of her parental rights to her son, T.H., primarily contending that because her visitation rights were limited, the Department of Social and Health Services (DSHS) did not meet its burden to show that it *1142 provided all services capable of correcting parental deficiencies. We conclude that although visitation is an important right of the family, it is noton its owna service that must be provided under RCW 13.34.180(1)(d). Because substantial evidence supports the trial court's findings that DSHS met its burden to prove the statutory elements required for entry of a termination order, we affirm the termination of Hackney-Farias's parental rights. We reject Hackney-Farias's other contentions in the unpublished portion of this opinion.

FACTS
¶ 2 T.H. was born on June 10, 1993, and Hackney-Farias voluntarily placed him in foster care on June 15, 2004. T.H. was found dependent in November 2004. The court found that Hackney-Farias had physically and verbally abused T.H., neglected T.H., was aware that T.H. was being sexually abused by her boyfriend's son but took limited actions to protect T.H. from further abuse, and was aware her husband was physically abusing T.H. but did not intervene. The court also found that during visits between T.H. and Hackney-Farias while he was in foster care (before the dependency period), Hackney-Farias told T.H. he was lying about the abuse and insulted T.H.'s caregivers. T.H. was extremely upset and distraught after contact with Hackney-Farias.
¶ 3 In the dispositional order, the dependency court ordered Hackney-Farias to participate in a psychiatric evaluation with a parenting component, mental health counseling, parenting classes, and anger management classes. The court ordered that no in-person visitation occur until
the child's therapist recommends/supports visitation, the child . . . wishes to visit, and the social worker and [court-appointed special advocate] CASA recommend/support visitation. The social worker and/or CASA shall consult with the mother's treating psychiatrist and therapist and the youth's therapist prior to approving any visitation.
Exhibit 2, at 3. If those conditions were met, in-person visitation would be supervised "to protect the child's health, safety and welfare because of the volatility of mother's and child's relationship and past poor visits; child has been upset at prior visits with the mother." Exhibit 2, at 4. T.H. was permitted to initiate phone contact with his mother if he desired to speak with her.
¶ 4 The next month, Hackney-Farias called the police to initiate a child welfare check, alleging that she had called the home where T.H. was living to speak to him and heard him screaming in the background. Around this same time period, Hackney-Farias obtained T.H.'s e-mail address and e-mailed him directly, blaming him for lying about abuse. DSHS was notified of these occurrences and sent a letter to Hackney-Farias, reminding her that she was ordered not to initiate any contact with her son. As a result of her defiance of these orders and the inappropriate content of her contact with T.H., DSHS required future phone conversations initiated by T.H. to his mother to be monitored by T.H.'s social worker.
¶ 5 A review hearing was held in January 2005, and the court found that Hackney-Farias had not complied with the court order requiring participation in a psychiatric evaluation or anger management classes and had not attended counseling for most of the previous two months. As to visitation, the court stated that
Mother is not to have in person visits at this time until recommended by the child's therapist and if agreed upon by all parties. Therapist does not recommend or support visitation at this time. Mother has engaged in internet instant messaging and email contact with child, but has made inappropriate comments. All written communication from the mother is being screened by the Department.
Exhibit 4, at 4.
¶ 6 At the next review hearing in May 2005, the court found that Hackney-Farias had "not demonstrated consistent measurable progress in meeting the dispositional plan requirements," and found that the phone visitation was adequate. Exhibit 30, at 2. The court noted that T.H. had initiated phone *1143 contact, but that during that contact, Hackney-Farias
alluded to future activities she and child could do this summer and does not demonstrate the ability to understand that while no visits are occurring, it is inappropriate for her to offer social and travel activities she is planning in the near future for herself and the child. Mother does not demonstrate the ability to place the child's needs above her own wants.
Exhibit 30, at 3. The court indicated that DSHS should file a termination petition.
¶ 7 At a July 2005 review hearing, the court found that Hackney-Farias had not yet participated in court-ordered individual counseling and reiterated that "Mother is not to have in person visits at this time until recommended by mother's therapist, child's therapist, CASA and [Department of Children and Family Services] social worker." Exhibit 36, at 4. The court ordered Hackney-Farias to sign releases of information to allow DSHS to verify with her therapist that she attends sessions regularly and also verify the therapist's diagnosis.
¶ 8 At a permanency planning hearing the next month, the court found that Hackney-Farias had not provided any documentation that she was participating in counseling or that she had signed the court-ordered releases of information. The court noted that phone visitation was still permitted if initiated by T.H., but denied Hackney-Farias's request for in-person visitation.
¶ 9 A review hearing was held in October 2005, and the court found that Hackney-Farias had not complied with court-ordered parenting classes and training as recommended by her psychologist and had not completed a psychiatric evaluation.
¶ 10 At a review hearing in February 2006, the court denied Hackney-Farias's motions for in-person visitation and joint counseling with T.H. "based on the positions of [T.H.] and his therapist." Exhibit 55, at 6.
¶ 11 A seven-day termination trial was held in April 2006, after which the trial court terminated Hackney-Farias's parental rights to T.H. After the court had issued its oral ruling, but before the written order was entered, Hackney-Farias attempted to contact T.H. on his MySpace.com website. On the same day that the court entered its written termination order, it entered a restraining order prohibiting Hackney-Farias from contacting T.H. in any way. Hackney-Farias moved to vacate the order, but the court denied the motion.
¶ 12 Hackney-Farias timely appealed the termination order and the restraining order.

ANALYSIS
Visitation as a Service
¶ 13 RCW 13.34.180(1)(a)-(f) sets forth elements that must be proved in order to terminate parental rights. One of these elements is that "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided[.]" RCW 13.34.180(1)(d). Hackney-Farias contends that visitation is a service that must be provided under this statute and, therefore, because she was not provided with in-person visitation, the court erred in finding that DSHS met its burden as to RCW 13.34.180(1)(d).
¶ 14 While Hackney-Farias cites no statute expressly defining visitation as a service, she contends that the Legislature consistently considers visitation a service, and she cites two statutes as evidence of this consistent approach. RCW 13.34.138(1)(b) states that if a dependent child is not returned home after a review hearing, the court must state in writing
(vi) Whether the parents have visited the child and any reasons why visitation has not occurred or has been infrequent;
(vii) Whether additional services, including housing assistance, are needed to facilitate the return of the child to the child's parents; if so, the court shall order that reasonable services be offered specifying such services[.]
Hackney-Farias contends that because one section refers to visitation and the following section refers to "additional services," the Legislature considers visitation a service. *1144 But the statute is discussing a hearing reviewing the dispositional order; because this is a review hearing, "additional services" logically refers to services in addition to those provided in the dispositional order. The dispositional order has separate sections for services and visitation, and simply because these two sections are mentioned in adjacent sections of this statute does not imply that visitation is a type of service.
¶ 15 As a second example of the Legislature's treatment of visitation as a service, Hackney-Farias cites RCW 13.34.145(13), which provides in part:
The approval of a permanency plan that does not contemplate the return of the child to the parent does not relieve the supervising agency of its obligation to provide reasonable services, under this chapter, intended to effectuate the return of the child to the parent, including but not limited to, visitation rights.
This section does refer to visitation rights as a service intended to effectuate the return of the child to the parent, but specifically in the context of a permanency plan. It does not affect the use of the word "services" in RCW 13.34.180(1)(d), where "services" refers to services capable of correcting parental deficiencies. Visitation may serve to strengthen a parent-child bond, but RCW 13.34.145(13) does not establish that visitation is a service capable of correcting a parental deficiency that must be provided by DSHS before termination. We conclude that the examples cited by Hackney-Farias do not establish that the Legislature considers visitation a service for purposes of RCW 13.34.180(1)(d).
¶ 16 Furthermore, this court has interpreted the meaning of "services" required by RCW 13.34.180(1)(d), and its interpretation while not specifically addressing visitation is instructive and applicable:
The services to which RCW 13.34.180(1)(d) refers are those ordered under RCW 13.34.136. That section speaks of services offered to a parent "to enable them to resume custody." The statute requires that the agency charged with supervising the children "provide all reasonable services that are available within the agency, or within the community, or those services which the department has the existing contracts to purchase." The services offered to the [parents] under this statute included domestic violence counseling, parenting classes, drug and alcohol counseling, and random urinalyses. These are the kinds of services the statute contemplates.
In re Dependency of A.A., 105 Wash.App. 604, 608-09, 20 P.3d 492 (2001) (footnotes omitted).
¶ 17 As the A.A. court notes, RCW 13.34.180(1)(d)'s use of the word "services" refers to the services ordered under RCW 13.34.136, and that statute clearly differentiates between "services" and visitation. That statute requires the agency responsible for a child who has been removed from his or her home to provide the dependency court a plan for the child's care.
(i) The agency plan shall specify what services the parents will be offered to enable them to resume custody, what requirements the parents must meet to resume custody, and a time limit for each service plan and parental requirement.
(ii) Visitation is the right of the family, including the child and the parent, in cases in which visitation is in the best interest of the child. . . . Visitation shall not be limited as a sanction for a parent's failure to comply with court orders or services where the health, safety, or welfare of the child is not at risk as a result of the visitation. . . .
RCW 13.34.136(1)(b)(i), (ii). The fact that the Legislature prohibits a dependency court from limiting visitation as a sanction for a parent's failure to comply with services implies that visitation is not in itself considered a service. There may be situations where visitation is part of a required service, such as an interactive parenting class. But it does not, on its own, correct parental deficiencies to enable the parent to resume custody, and thus, we conclude that it is not a "service" that must be provided under RCW 13.34.180(1)(d). Therefore, the trial court did not err in finding that DSHS met its burden as to the services element.
*1145 Visitation Restrictions
¶ 18 Hackney-Farias also argues that the termination order should be reversed because the dependency court improperly restricted visitation without an express finding that visitation would be contrary to the health, safety, and welfare of T.H. DSHS objects to this argument, contending that because Hackney-Farias did not appeal the dependency disposition order or subsequent review orders entered by the dependency court, she cannot argue that those orders were improper in an appeal of the termination order. We agree with DSHS. If a parent wishes to challenge the propriety of the underlying dependency order limiting visitation, he or she must do so in an appeal of the disposition order or a petition for discretionary review of other orders entered by the dependency court.
¶ 19 In an appeal of a termination order, we analyze whether DSHS met its burden to prove the required termination elements under RCW 13.34.180(1)(a)-(f). A party appealing a termination order may argue that an improper denial of visitation relates to one or more of those termination elements. Here, Hackney-Farias contends that visitation is a service and that because the dependency court improperly restricted visitation, DSHS did not meet its burden as to the services element. Hackney-Farias has not argued that an improper visitation restriction relates to any other element that DSHS must prove under RCW 13.34.180(1). Thus, having rejected her argument that visitation is a required service, we need not further review the propriety of the dependency court's orders on visitation because Hackney-Farias has not argued that those orders are otherwise related to the termination.
¶ 20 But even though Hackney-Farias did not appeal or petition for discretionary review of the visitation orders entered by the dependency courtand in this appeal of the termination, she has not successfully related lack of visitation to a statutory termination elementwe will address the dependency court's orders restricting visitation. We elect to do so in this case because it was not heretofore clear that these orders cannot be reviewed in a termination appeal unless related to a statutory termination element. The 2004 amendments to the dependency statutes emphasize the importance of visitation and that visitation cannot be denied as a sanction for a parent's failure to participate in services, but the procedural method for appealing visitation orders has not been detailed previously. Thus, we consider Hackney-Farias's claim that the dependency court improperly restricted visitation without an express finding that visitation would be contrary to T.H.'s health, safety, and welfare and conclude that because the evidence supports the conclusion that visitation would be harmful to T.H., the dependency court did not improperly restrict visitation.
¶ 21 Visitation is crucial to the reunification of families, and the Legislature has recognized its importance.
Visitation is the right of the family, including the child and the parent, in cases in which visitation is in the best interest of the child. . . . Visitation shall not be limited as a sanction for a parent's failure to comply with court orders or services where the health, safety, or welfare of the child is not at risk as a result of the visitation. Visitation may be limited or denied only if the court determines that such limitation or denial is necessary to protect the child's health, safety, or welfare. . . .
RCW 13.34.136(1)(b)(ii). This statute does not require an express finding that a visitation limitation is necessary to protect the child's health, safety, or welfare. In addition, this court has stated that an express finding is not required if the evidence supports the conclusion that visitation is harmful to the child. In re Dependency of J.W., 90 Wash.App. 417, 428, 953 P.2d 104 (1998).
¶ 22 Hackney-Farias argues that we should not follow the J.W. reasoning because it predates the current version of RCW 13.34.136(1)(b)(ii), which recognizes the importance of visitation.[1] While the 2004 *1146 amendments to RCW 13.34.136 do recognize the importance of visitation to the reunification of families, the Legislature not did amend the statute to require express findings, even though J.W. had been decided at the time of the amendments. We may presume the Legislature agrees that an express finding is not required. While an express written finding is certainly preferable, we follow J.W. to conclude that a written finding is not required if the evidence establishes that the dependency court restricted visitation to protect the child from harm.
¶ 23 Here, the evidence provided[2] demonstrates that the dependency court restricted visitation for exactly this reason. At one review hearing during the dependency period, Hackney-Farias asked for clarification as to the reasons for the court's denial of in-person visitation, and the court explained,
All I can say right now is that the situation when I last saw this case was disastrous in terms of the quality of visitations and the effect on [T.H.], and I want to see that change. And my intention is to see Ms. Hackney-Farias comply with services so that we can move towards reunification. It's up to her whether she wants to do that or not.
Verbatim Report of Proceedings (VRP) (Jan. 20, 2005) at 19. Hackney-Farias requested in-person visitation again at a later review hearing, and the court reiterated its position on visitation.
I also think that [the psychological evaluator] is right to have serious reservations about Ms. Hackney-Farias' ability to parent this child given their history and given the problems and given her lack of insight to date, and that raises concerns for me, not only for Ms. Hackney-Farias and whether she's really in a position to appreciate the problems that cause[d] the court to suspend supervised visits in the first place but also whether or not she's really in a position to resume them without causing further damage to [T.H.].
. . . .
. . . I guess what I'm dealing with is the situation before me right now which is a mother who's not insightful, a child who's damaged and a history of supervised visits that were bad for this child, psychologically damaging for this child, even though they were well supervised and the unavailability at this point of an appropriate coach or therapist to provide interventionist supervision. So that's the reason right now I'm denying the request for visitation that's . . . beyond telephonic visitation.
VRP (July 26, 2005) at 34, 37. When Hackney-Farias moved for in-person visitation the following month, the court again demonstrated that it was basing its denial of the motion on concerns for T.H.'s welfare.
And I'll say again what I've said before which is last time we had monitored visitation it was a disaster. And the messages that [T.H.] for from his mother were incredibly damaging and harmful and hurtful which is one reason why we've been pushing so long for getting these evaluations done and getting Ms. Hackney-Farias to engage in services that correspond with the psychological evaluations.
I think it's still appropriate since [T.H.] is clearly aware of his ability to contact his mother to leave it to [T.H.] to initiate contact, especially since Ms. Hackney-Farias still hasn't engaged in the very services which perhaps would address the hurtful and dysfunctional way that she's worked and talked to [T.H.] when she did have monitored supervision.
VRP (Aug. 24, 2005) at 13. Even without an express finding, these statements make clear that the dependency court placed limitations on Hackney-Farias's visitation with T.H. to protect him from harm. While the court does mention that Hackney-Farias has not engaged in services, it did not deny visitation as a sanction for not participating in servicesit simply noted that Hackney-Farias's parenting deficiencies that had led to harmful *1147 prior visitation had not been remedied through services. And the harmful communication did not only occur before the dependency period, but also took place during some phone conversations during dependency, so the court was not simply relying on much earlier incidents of harm to justify the restrictions. The court limited visitation to telephone conversations (with certain restrictions) as an attempt to maximize parent-child contact while protecting T.H. from harm. The court's order is consistent with RCW 13.34.136(1)(b)(ii) in that it acknowledges the importance of visitation (by permitting telephone conversations) but also considers the risk of harm to T.H. by prohibiting in-person visitation. Therefore, we conclude that the court properly restricted visitation to prevent harm to T.H.
¶ 24 We affirm.
¶ 25 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
WE CONCUR: SCHINDLER, A.C.J., and GROSSE, J.
NOTES
[1] At the time J.W. was decided, the visitation statute read only: "Visitation may be limited or denied only if the court determines that such limitation or denial is necessary to protect the child's health, safety, or welfare." Former RCW 13.34.136(1)(b)(ii) (1998).
[2] Hackney-Farias has not provided transcripts of all review hearings, although her motions for in-person visitation were denied at each review hearing. She explained in her supplemental brief that not all review hearings were recorded, but that she has provided transcripts for all recorded hearings. The court's reasoning is clear from the transcripts provided and the record is therefore adequate.