[Nos. 27033-5-III; 27034-3-III.   Division Three.   June 11, 2009.]

*In the Matter of the Dependency of* TYLER L.

*In the Matter of the Dependency of* BRENDEN B.

---

legally be married to his 7-year-old niece can be determined by reference to state law.

*David L. Donnan* and *Maureen M. Cyr* (of *Washington Appellate Project*), for petitioner.

*Robert M. McKenna, Attorney General*, and *Kelly E. Konkright, Assistant*, for respondent.

¶1 BROWN, J. — During dependency, "frequent visitation is crucial for maintaining parent-child relationships and making it possible for parents and children to safely re-unify." RCW 13.34.136(2)(b)(ii). Sarah L. is the mother of two boys, eight-year-old Tyler L. and four-year-old Brenden B.[1] After the trial court found the boys dependent, Ms. L. was granted supervised visitation with both boys that became problematic, apparently not due to Ms. L's conduct. The court suspended the visits on the recommendation of the guardian ad litem (GAL) even though the Department of Social and Health Services (Department) did not join in this motion. Ms. L. unsuccessfully requested therapeutic visitation services that were recommended by a mental health specialist. This court granted discretionary review. Concluding the trial court abused its discretion in its visitation decisions, we reverse.

## FACTS

¶2 On September 6, 2006, the trial court entered an agreed order of dependency for Tyler and Brenden. On April 16, 2007, the court returned the children to Ms. L. But, approximately two months later the Department removed the children from her home over concerns Ms. L. was not complying with court-ordered services. The court allowed supervised visitation between Ms. L. and the boys. Ms. L.

---

[1] Neither boy's father is a party to this appeal.

attended the visits regularly, showing affection and appropriate interaction in general.

¶3 On February 25, 2008, the children's GAL, Loren Page, filed a motion and declaration to suspend Ms. L.'s visits. The Department did not join in this motion. The GAL cited the foster parents' reports that the children had severe physical and emotional responses before and/or after visits with their mother. Social worker Barbara Catlin, however, observed a two-hour visit between Tyler and his mother and noted that she saw "nothing that was a cause for great concern." Clerk's Papers (CP) at 199. Regarding the children's emotional responses to the visits, she noted that the "fear, anxiety and/or sadness of separation that stems from both anticipating and leaving a visit, may cause a child to act out." *Id.*

¶4 Child Mental Health Specialist Sue Elg recommended that future contact between Ms. L. and the boys "occur in a therapeutic setting to ensure each child's needs are being met and to work on creating healthy parent/child relationships." CP at 196. Dr. Christine Guzzardo, PhD, conducted a neuropsychological assessment of Tyler and diagnosed him with, among other conditions, an attachment disorder. Dr. Guzzardo concluded that "structure and interventions . . . are absolutely necessary at this time." CP at 213. Educating parents and the caregiver is a major part of therapy for attachment disorders. Ms. L. requested therapeutic visitation with the children.

¶5 On April 7, 2008, the trial court considered the GAL's motion to suspend visitation and Ms. L.'s request for therapeutic visitation. The court found the visits were harmful to the children and suspended all visits. The court also denied Ms. L.'s request for therapeutic visitation. Ms. L.'s attorney asked whether the court was finding Ms. L. was the cause of the harm. The court replied, "I should be clear on that. I'm not finding that." Report of Proceedings at 20. Ms. L. requested, and was granted, discretionary review.

ANALYSIS

A. Visitation

¶6 The issue is whether the dependency court erred by abusing its discretion in suspending Ms. L.'s visitation with Tyler and Brenden. Ms. L. contends no concrete risk of harm justified the suspension.

■■ ¶7 Trial courts have broad discretion in matters dealing with children's welfare. *In re Dependency of T.L.G.*, 139 Wn. App. 1, 15, 156 P.3d 222 (2007). A trial court's visitation case disposition will not be disturbed on appeal unless the court abused its discretion. *Id.* When a trial court's decision is manifestly unreasonable or based on untenable grounds, it has abused its discretion. *In re Custody of S.H.B.*, 118 Wn. App. 71, 78-79, 74 P.3d 674 (2003).

■■ ¶8 Visitation is crucial to the reunification of families, and the legislature has recognized its importance in RCW 13.34.136(2)(b)(ii): "Visitation is the right of the family, including the child and the parent, in cases in which visitation is in the best interest of the child. . . . Visitation may be limited or denied only if the court determines that such limitation or denial is necessary to protect the child's health, safety, or welfare." An express harm finding is not required if the evidence supports the conclusion that visitation is harmful to the child. *In re Dependency of T.H.*, 139 Wn. App. 784, 794-95, 162 P.3d 1141, *review denied*, 162 Wn.2d 1001 (2007). But, the harm must be "an actual risk, not speculation based on reports." *T.L.G.*, 139 Wn. App. at 17. Further, the burden is on the agency "to prove that visitation poses a current concrete risk to the children." *Id.* at 18. "Something more than opinions based on a single incident is necessary to support a finding of risk of harm." *Id.*

¶9 In *T.H.*, visitation was restricted based on the " 'quality of visitations and the effect on [T.H.].' " 139 Wn. App. at 795 (alteration in original). The court later denied the

parent's request to lift the restriction based in part on " 'the unavailability at this point of an appropriate coach or therapist to provide interventionist supervision.' " *Id.* at 796. Division One of this court affirmed the visitation restriction. *Id.* at 797.

¶10 Our facts are distinguishable from *T.H.* Here, Ms. L. regularly attended visitation with Tyler and Brenden. She showed affection and appropriately interacted with the children. No finding shows Ms. L. caused harm to the children during the visits. Solely present is the GAL's opinion that negative responses occurred before and/or after the children's visits. Ms. Catlin noted that the "fear, anxiety and/or sadness of separation that stems from both anticipating and leaving a visit, may cause a child to act out." CP at 199. Considering Ms. L. requested therapeutic visitation, terminating visitation is premature without exploring that option. Because the evidence does not support that restricted visitation is necessary to protect Tyler and Brenden's health, safety, or welfare and because visitation is crucial to the reunification of families, the dependency court erred in suspending visitation.

## B. Therapeutic Visitation Decision

¶11 The issue is whether the trial court erred by abusing its discretion in denying Ms. L.'s request for therapeutic visitation. Ms. L. contends this service should have been offered to encourage family reunification.

¶12 "[P]reservation of the family and reunification of a dependent child with his or her parents are goals for dependent children." *McKinney v. State*, 134 Wn.2d 388, 404, 950 P.2d 461 (1998) (citing RCW 13.34.130). The Department "shall develop methods for coordination of services to parents and children in child dependency cases." RCW 13.34.025(1). "[S]ervices include individual, group, and family counseling; substance abuse treatment services; mental health services; assistance to address domestic violence; services designed to provide temporary child care

and *therapeutic services for families*." RCW 13.34.025(2)(a) (emphasis added).

¶13 In *T.L.G.*, the dependency court suspended visitation between parents and their children after an altercation occurred between the father and a security guard in front of the children. 139 Wn. App. at 4. In reversing the court's visitation suspension, Division One of this court noted, "We are troubled by the court's failure to order therapeutic visits or structure any contact that would begin the process of reunification." *Id.* at 18.

¶14 Here, the record does not support a finding that the Department offered necessary services, including therapeutic visitation. Ms. Elg recommended that future contact between Ms. L. and the boys "occur in a therapeutic setting to ensure each child's needs are being met and to work on creating healthy parent/child relationships." CP at 196. Further, Dr. Guzzardo diagnosed Tyler with an attachment disorder, with education in a therapeutic setting being "absolutely necessary." CP at 213. Thus, therapeutic visits would assist with Tyler's attachment disorder, help both children deal with the stress apparently generated by the visits, and help remedy parental deficiencies. With no showing of actual harm that would be caused by such therapeutic service, the court's denial was manifestly unreasonable.

¶15 Given our analysis, we conclude the trial court erred by restricting visitation and denying Ms. L.'s request for therapeutic visitation.

¶16 Reversed.

SCHULTHEIS, C.J., and KULIK, J., concur.