# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of S.C.P., D.O.B. 8/21/01 | ) ) ) ) | No. 68672-1-I |
| | ) | DIVISION ONE |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) | UNPUBLISHED OPINION |
| Respondent, | ) ) ) | |
| v. | ) ) | |
| LORRAINE REYES PAYTON, | ) ) | |
| Appellant. | ) ) | FILED: May 20, 2013 |

GROSSE, J. — In a proceeding to terminate parental rights, the Department of Social and Health Services (the Department) must, inter alia, offer all court-ordered and necessary services to the parent and tailor the services to the parent's needs. The Department need not, however, offer services from which a parent is unable to benefit. And, even where the Department inexcusably fails to offer a service to a willing parent, termination is appropriate if the service would not have remedied the parent's deficiencies within the foreseeable future.

Here, the Department did not fail to timely offer Lorraine Reyes Payton (Reyes) mental health services. The Department offered the services once it perceived a need for them. Further, in an unchallenged finding, the trial court found that even if mental health services had been provided immediately following the evaluation, they would not have borne any fruit for months, if not years, and that for S.C.P., that time frame does not constitute "the foreseeable future." Additionally, we reject Reyes' argument that visitation is a "service" that

must be provided. The trial court's finding as to the provision of services is supported by substantial evidence. The remainder of the trial court's findings Reyes challenges are likewise supported by substantial evidence. Accordingly, we affirm the trial court's order terminating Reyes' parental rights to S.C.P.

## FACTS

S.C.P., born August 21, 2001, is the youngest of Lorraine Reyes' five children.[1] S.C.P. and her siblings were placed in protective custody in June 2009 because of Reyes' arrest for possession of a controlled substance with intent to deliver. S.C.P. was found dependent by order filed on August 18, 2009. Dispositional orders were entered on the same date.

Reyes pleaded guilty to three drug felonies in December 2009 and was sentenced to prison in February 2010. In November 2010, a petition for the termination of both of S.C.P.'s parents' parental rights was filed. The father was found in default, and an order terminating his parental rights was entered May 19, 2011.

A fact-finding hearing was held on the petition to terminate Reyes' parental rights. After the hearing, the court entered findings, conclusions, and an order granting the petition to terminate the parent-child relationship as to Reyes. Reyes appeals.

---

[1] The trial court's unchallenged findings of fact are verities on appeal. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001). We rely on the court's findings of fact, conclusions of law, and order terminating the parent-child relationship that was filed in the trial court on April 11, 2012. We do not consider the document entitled "Mother's Proposed Findings of Fact and Conclusions of Law," even though Reyes assigns error to some of the findings contained therein and included this document with her notice of appeal. This document is signed only by Reyes' counsel, not the trial court, and does not appear to have been filed in the court.

ANALYSIS

In order to terminate the parent-child relationship, the Department must satisfy two prongs.[2] The first prong focuses on the adequacy of the parents and requires proof by clear, cogent, and convincing evidence of the six elements set out in RCW 13.34.180.[3] The second prong focuses on the child's best interests and need be proved by only a preponderance of the evidence.[4] If the first prong is not satisfied, the court does not reach the second.[5]

The six elements involved in the first prong are

(a)    That the child has been found to be a dependent child;

(b)    That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c)    That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d)    That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e)    That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. The presumption shall not arise unless the petitioner makes a showing that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided. . . .
. . . .

---

[2] In re Dependency of K.N.J., 171 Wn.2d 568, 576, 257 P.3d 522 (2011).
[3] In re K.N.J., 171 Wn.2d at 576-77.
[4] In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010).
[5] In re A.B., 168 Wn.2d at 911.

(f)     That continuation of the parent and child relationship clearly diminished the child's prospects for early integration into a stable and permanent home.[6]

Reyes challenges the trial court's findings regarding elements (d) and (e) as well as the trial court's finding that termination of her parental rights was in S.C.P.'s best interests.  Our review of these findings is limited to determining whether they are supported by substantial evidence.[7]  Evidence is substantial if it is sufficient to persuade a fair-minded person of the truth of the declared premise.[8]  Because the trial court has the opportunity to hear the testimony and observe the witnesses, the trial court's decision is entitled to deference, and we do not weigh the evidence or judge the credibility of the witnesses.[9]

RCW 13.34.180(1)(d)

Reyes argues that the trial court erred in finding that the Department offered her all necessary services because the Department did not provide her with visitation and a timely psychological evaluation.

Visitation

This court has held that visitation is not a "service" for purposes of RCW 13.34.136 and 13.34.180(1)(d).[10]  Reyes argues that our holding is no longer valid in light of a recent amendment to the federal Adoption and Safe Families Act of 1977, which is incorporated into Washington law.  Specifically, for purposes of chapter 13.34 RCW, remedial services geared to correcting parental deficiencies are those services defined as "time-limited family reunification

---

[6] RCW 13.34.180(1).
[7] In re Welfare of C.B., 134 Wn. App. 942, 952-53, 143 P.3d 846 (2006).
[8] In re C.B., 134 Wn. App. at 953.
[9] In re C.B., 134 Wn. App. at 952.
[10] In re Dependency of T.H., 139 Wn. App. 784, 792, 162 P.3d 1141 (2007).

services" in the federal statute.[11] Included in the list of time-limited family reunification services in the federal statute is "[s]ervices and activities designed to facilitate access to and visitation of children by parents and siblings."[12] Based on this, Reyes argues that the Department was required to offer her visitation with S.C.P.

The Department argues that Reyes waived this argument by failing to raise it below. Reyes does not dispute that she did not raise this argument below. We agree with the Department that Reyes waived this argument on appeal.[13] Further, the amendment to the federal statute does not, as Reyes argues, change our holding in In re Dependency of T.H. that visitation is not a "service" for purposes of RCW 13.34.136 and 13.34.180(1)(d).[14] The federal statute refers to services and activities designed to "facilitate . . . visitation of children by parents and siblings."[15] Under Reyes' argument, visitation would be a service designed to facilitate visitation. This argument makes no logical sense.

Mental Health Services

Reyes argues that the trial court erred in finding that the Department offered her all necessary services because the Department did not timely offer her mental health services. Again, we disagree with Reyes.

---

[11] RCW 13.34.025(2)(a).
[12] 49 U.S.C. § 629a(a)(7)(B)(vii).
[13] See RAP 2.5(a). We reject Reyes' argument that she is entitled to raise the argument regarding visitation because her argument is a sufficiency of the evidence argument that may be raised for the first time on appeal under RAP 2.5(a)(2). Her argument is not a sufficiency of the evidence argument.
[14] 139 Wn. App. 784, 792, 162 P.3d 1141 (2007).
[15] 49 U.S.C. § 629(a)(7)(B)(vii).

The Department is required to offer all court-ordered and necessary services and must tailor the services to the parent's needs.[16] To meet this burden, the Department must show either that it offered the parent remedial services but the parent did not avail herself of them, or that the parent waived her right to such services.[17]

Relying on In re the Termination of S.J.,[18] Reyes argues that she was entitled to mental health services at the same time she was provided drug treatment services. The circumstances in S.J. are, however, quite different from the circumstances in this case. In S.J., the mother's mental health issues were identified within months of when her children were removed from her care. Here, neither the Department nor any of the social workers involved in Reyes' case had any indication of a need for a mental health evaluation until September 2011, while Reyes was in prison on the drug offenses.

Moreover, the Department is not required to offer services from which a parent is unable to benefit.[19] And, only services capable of correcting parental deficiencies within the foreseeable future need be offered or provided. In an unchallenged finding, the trial court found:

> The mother's particular mental health problems, to the extent they've been identified, appear to be long term and would likely require some very long-term treatment. Even with long-term treatment it is unknown if the mental health problems could be resolved. Even if mental health services had been provided immediately following the evaluation, they would not have borne any fruit for months, if not years. For this child that time frame does not constitute "the foreseeable future." More importantly, mental health problems are not the major factor in this case. Unless the

---

[16] In re Dependency of D.A., 124 Wn. App. 644, 651, 102 P.3d 847 (2004).
[17] In re Welfare of S.V.B., 75 Wn. App. 762, 770, 880 P.2d 80 (1994).
[18] 162 Wn. App. 873, 256 P.3d 470 (2011).
[19] In re Dependency of T.R., 108 Wn. App. 149, 163, 29 P.3d 1275 (2001).

drug problem has been dealt with reliably, the child will not be able to be placed with mother in the foreseeable future.

The trial court's finding that the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided is supported by substantial evidence.

RCW 13.34.180(1)(e)

Reyes purports to challenge the trial court's finding that there is little likelihood that conditions will be remedied so that S.C.P. could be returned to her in the near future.[20] But, she did not assign error to this finding of the trial court. It is, accordingly, a verity on appeal. Nor did Reyes assign error to the trial court's finding that her substantial number of criminal convictions and her infractions committed while in prison also demonstrate little likelihood that conditions will be remedies in the near future.[21] This finding, too, is a verity on appeal.

---

[20] Finding of Fact 2.28 provides:
> There is little likelihood that conditions will be remedied so that the child can be returned to the mother in the near future. The mother has a significant criminal history, and has been involved in the criminal system for over two decades. She has been incarcerated numerous times making her unavailable to care for her child. She has a significant substance abuse history and had several attempts at treatment without demonstrated success.

[21] Finding of Fact 2.29 provides:
> The mother had been convicted of over 30 misdemeanors and five drug related felonies. The mother testified that the theft convictions were all drug related. During the course of her incarceration, she had two major infractions in prison which are significant. One of the infractions involved giving an over-the-counter medication from one prisoner to another. This is similar to drug dealing criminal behavior that resulted in the mother's incarceration and is

7

Reyes does, however, challenge the trial court's finding regarding the rebuttable presumption:

> The mother failed to substantially improve her parenting deficiencies within twelve months following entry of the dispositional order. [The Department] offered the mother all necessary services within twelve months of entry of the dispositional order. This gives rise to the rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the mother in the near future[,] which the mother has not overcome.[22]

Reyes argues that the trial court improperly relied on the rebuttable presumption because, under the statute, the presumption does not arise unless the Department shows that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided.[23] Relying on her argument regarding visitation and mental health services, Reyes argues that the Department failed to make the required showing as to necessary services to allow the presumption to arise. Because, however, we find that all necessary services reasonably capable of correcting Reyes'

---

problematic in that she acknowledged that her IOP [(intensive outpatient)] treatment in prison addressed her criminal behavior, and yet she committed this infraction after completing IOP. The other violation, tattooing her roommate, the mother committed simply because somebody "bugged her" a lot. Not only does it appear that the mother did not receive any benefit from committing these actions, these infractions, which occurred within months of transitioning to work release, exposed her to the possibility of prolonged incarceration which meant that she risked being unavailable to care for [S.C.P.] for an even longer period of time. The substantial number of convictions and the progression in number and length of incarcerations, her continuing to engage in criminal activity knowing she would be unavailable to parent in any meaningful way, along with the current infractions demonstrates little likelihood that conditions will be remedied in the near future.

[22] The rebuttable presumption is found in RCW 13.34.180(1)(e).
[23] RCW 13.34.180(1)(e).

parental deficiencies within the foreseeable future have been clearly offered or provided, we reject Reyes' argument.

Reyes also challenges the court's finding that "the foreseeable future was the present," meaning that S.C.P. needs immediate placement in a permanent home. The court did not specifically find that "the foreseeable future was the present," but rather found:

> Dr. Jason Prinster undertook an evaluation of the child. In Dr. Prinster's opinion, the child needs stability and consistency and prolonging the dependency presents a risk that the child will develop more severe problems. Dr. Prinster's opinion based on the history of this child, the long duration of this dependency, as well as the factors involving the child's behavior, is highly credible. [S.C.P.'s] current placement provider does not want to keep [S.C.P.] due in part to her behaviors. Permanency and stability are paramount to [S.C.P.'s] best interests. [S.C.P.] has been in limbo for too long and to continue the parent-child relationship for a significant period of time which, at a minimum[,] would take months is interfering with her ability to integrate into a permanent and stable home. This child needs stability now for healthy growth and development which cannot be achieved except through termination of parental rights.

The trial court's finding is supported by substantial evidence. Dr. Prinster, who evaluated S.C.P. in December 2011, testified that S.C.P. needed consistency, predictability, and stability as soon as possible, otherwise S.C.P.'s emotional distress would worsen and her ability to function would lessen. S.C.P.'s volunteer guardian ad litem likewise felt that S.C.P. needed stability, predictability, and permanency. Dr. Prinster testified that S.C.P. needed an attentive and consistent caregiver who was part of her treatment and part of her life. Dr. Prinster recommended "an interactive parent who has a lot of time and energy to help [S.C.P.] out." The evidence shows that Reyes would not be able to fulfill that role in the foreseeable future. For example, in an unchallenged

finding, the court found that a determination of whether Reyes could remain clean and sober for any length of time once released from prison would take a significant period of time and that her sobriety while incarcerated cannot be viewed as an indicator of long-term sobriety. Further, according to social worker Karen Kelsey, Reyes would have to aggressively pursue all of the services provided her for a period of six months before the reunification process could even begin. A return home would not happen until even later. In the meantime, Reyes would have to find stable housing, but at the time of trial, she had no idea where she would be living once released from prison. Because the evidence clearly shows that S.C.P. needs stability and a permanent home as soon as possible, and because the evidence also shows that Reyes cannot provide this, the trial court did not err in its finding as to S.C.P.'s immediate need for stability.

## RCW 13.34.190(1)(b)

Reyes challenges the trial court's finding that termination of her parental rights is in S.C.P.'s best interests.

If the Department establishes the six elements of RCW 13.34.180(1), the court must then consider whether termination of the parent-child relationship is in the best interests of the child.[24] Reyes argues that the trial court's finding as to S.C.P.'s best interests is premature because the Department failed to establish the six elements RCW 13.34.180(1). We reject this argument for the reasons set forth above.

Reyes also argues that termination is not in S.C.P.'s best interests because she and S.C.P. have a "history of a loving mother-daughter bond."

---

[24] RCW 13.34.190(1)(b).

Whether termination is in the best interests of the child must be proved by a preponderance of the evidence and determined based on the facts of each case.[25] Here, the trial court found, in an unchallenged finding, that S.C.P. has been out of Reyes' care for almost half of her life due to the mother's inability to care for S.C.P. We find no evidence of a history of a loving mother-daughter bond. In fact, Dr. Prinster testified that S.C.P.'s bond with Reyes appeared to be weak. Further, the uncontradicted opinion of the witnesses is that S.C.P. needs stability, consistency, and permanancy, and needs these things as soon as possible. The evidence shows that, at least for the foreseeable future, Reyes will be unable to provide this to S.C.P. We will not disturb the trial court's finding that termination of Reyes' parental rights is in S.C.P.'s best interests.

Affirmed.

WE CONCUR:

---

[25] In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980).