COURT OF APPEALS DIV. 1
STATE OF WASHINGTON

2015 JUN -8 AM 9: 52



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of: | NO. 72500-9-I |
| L.B.S.P.<br>DOB: 07/17/12<br>Minor Child. | |
| | DIVISION ONE |
| TRINA CURRY, | |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES, | UNPUBLISHED OPINION |
| Respondent. | |
| | FILED: June 8, 2015 |

LAU, J. — Trina Curry appeals the termination of her parental rights to her daughter. She argues the Department of Social and Health Services (Department) failed to expressly and understandably offer or provide all court-ordered and necessary mental health services to correct her parental deficiencies. We disagree and affirm.

## FACTS

In July 2012, Trina Curry gave birth to her eighth child, L.B.S.P. By the time it found L.B.S.P. to be dependent in April 2013, the court had terminated Curry's rights to each of her seven other children over a period of approximately 20 years. The dependency court directed Curry to engage in Dialectical Behavioral Therapy (DBT), retain a therapist with training in DBT, retain a parenting coach, and establish and maintain safe and stable housing. The court ordered the Department to assist Curry "with finding an appropriate DBT provider that accepts her medical benefits," starting with the Fremont Clinic and Sound Mental Health. Exhibit (Ex.) 5 at 14.

At a review hearing in May 2013, the court found that Curry partially complied with its prior order by calling Fremont to get on the wait list, and meeting with the Department to discuss services. But she missed two visits with L.B.S.P. and had "not begun individual mental health counseling and. . . [appeared] to be unwilling to find other housing." Ex. 6 at 5. The court found Curry was not making progress toward correcting her parenting deficiencies as she appeared "to still be unwilling to believe she is in need of mental health services, which will greatly hinder her ability to engage in therapy as ordered," and she was not "moving towards obtaining stable and safe housing." Ex. 6 at 5. The court ordered Curry to email the Department at least once every 2 weeks and ordered the Department to "plan for the eventuality/possibility that Fremont clinic will not accept" her and to "identify private providers" of DBT and take steps "to secure funding for these programs." Ex. 6 at 7.

At an August 2013 review hearing, for which Curry did not appear, the court found Curry began but then stopped participation with a parent coach, stopped visiting

L.B.S.P., and "was dropped by her visitation provider." Ex. 7 at 5. The court ordered the Department to "locate and provide and pay for DBT through an alternate provider," if Curry did not complete intake at Fremont by November 1, 2013. Ex. 7 at 10. On December 6, 2013, after Curry again failed to appear for a review hearing, the court found that Curry had "not been in contact with the Department," had "not followed through [with] regular contact [with] Fremont in order to get into DBT," had "not provided verification of service involvement," and had not visited L.B.S.P. since July 6, 2013. Ex. 10 at 5-6. The court ordered the Department to file a termination petition. The Department filed a petition to terminate Curry's parental rights in February 2014. At trial in July 2014, social worker Kyle Davoren testified that he monitored L.B.S.P.'s placement and assisted Curry with services from December 2012 through July 2013. Davoren met with Curry in May, discussed her ordered services, and reviewed a list of housing options with her. He contacted Seattle Mental Health and discovered that the DBT provider would not accept Curry into its group program based on a previous incident. During their meeting, Davoren assisted Curry with contacting Fremont to be added to the wait list. Davoren testified that Curry appeared to believe she did not need mental health services and expressed doubt about the effectiveness of DBT. She also appeared confused over the role of a parenting coach and was not cooperative with his efforts to assist with her housing search other than identifying options she had tried in the past.

Social worker Lisa Nielsen testified that she managed L.B.S.P.'s case from July 2013 through December 2013. Although she did not recall the specific dates, Nielsen testified that she sent an email to Curry and called the telephone numbers listed in the

case file for her, but received no response. Nielsen testified that she contacted the Fremont Clinic and learned that 1) Curry was not engaged in services; 2) she was no longer on the wait list; and 3) Curry would have to contact the clinic before she could be placed on the wait list again. Curry did not visit L.B.S.P. while Nielsen managed the case.

Social worker Colin Stewart testified that he took on L.B.S.P.'s case in January 2014 and Curry responded to his emails. At his first meeting with Curry, she told him that she intentionally stopped visiting L.B.S.P. in July 2013, she did not believe she needed DBT or any mental health treatment, she would not tell him about her housing situation, and she just wanted the State to release her child. Despite Curry's attitude, Stewart continued to provide information and encourage her to engage in services. Stewart testified that he contacted the Fremont Clinic and the DBT Center of Seattle in early February to arrange for Curry to be added to their wait lists and repeatedly urged Curry to contact those clinics and to begin the independent mental health therapy required by both programs. He later confirmed with the Fremont Clinic that Curry made contact and was added to the wait list in March 2014. Stewart also testified that he initially planned for the Department to pay for services at DBT Center of Seattle, but he learned in May or June of 2014 that the center would not enter a contract with the Department. Although Curry initially told Stewart that she was seeing a counselor at school, she did not identify that person or sign releases to allow the Department access to any records of individual treatment. Stewart also testified that Curry visited L.B.S.P. consistently "[f]or the most part" with approximately "four cancellations and two no

shows" while he managed the case. Report of Proceedings (RP) (Jul. 9, 2014) at 80 and 115.

Curry testified that she was willing to do DBT in order to get L.B.S.P. returned to her care. Despite all of her best efforts, she was unable to get into a DBT program. She admitted that she had not been in school since January 2014, was not seeing an individual therapist, and was living in housing not suitable for a child. In addition, Curry stated she had not completed parent coaching as ordered, was currently back on the wait list for DBT at the Fremont Clinic, and had not visited L.B.S.P. between mid-July 2013 and March 2014.

The trial court ruled that the Department had met its burden under RCW 13.34.180(1) and .190 and terminated Curry's parental rights. Curry appeals.

ANALYSIS

Parental rights are a fundamental liberty interest protected by the United States Constitution. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). To terminate parental rights, the State must satisfy a two-step test. First, it must prove the following statutory elements by clear, cogent, and convincing evidence:[1]

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably

---

[1] "'Clear, cogent and convincing' means highly probable." In re Welfare of M.R.H., 145 Wn. App. 10, 24, 188 P.3d 510 (2008).

available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . . and

. . . .

(f) That the continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1). If the trial court finds that the State has met its burden under RCW 13.34.180, it may terminate parental rights if it also finds by a preponderance of the evidence that termination is in the "best interests" of the child. RCW 13.34.190(b).

On review, unchallenged findings of fact are considered verities. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001). Challenged findings will be upheld "[i]f there is substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing, an appellate court should not disturb the trial court's findings." In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980).

Curry contends that the State failed to carry its burden of proving, by clear, cogent, and convincing evidence that "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided." RCW 13.34.180(1)(d). Although Curry assigns error to 18 numbered paragraphs of factual findings in the termination order, her argument is focused solely on whether the Department sufficiently offered or provided DBT services. She argues that the State's failure to assist her in obtaining DBT requires reversal. In particular, she contends that the Department should have 1) researched and prepared to obtain funding for private DBT providers as directed as early as May 2013; 2) assisted her with obtaining services from providers other than

Fremont; and 3) researched alternative funding options after learning that DBT Center of Seattle would not enter a contract with the Department.

But Curry does not dispute her repeated failure to follow the court's orders and cooperate with the Department's efforts regarding DBT during L.B.S.P.'s dependency. Curry does not contend or demonstrate that she complied with the dependency court's April 2013 order that once placed on the Fremont Clinic wait list, she "periodically, but no less than once every two weeks, inquire with the provider to determine her status on the wait list and inform" the Department of her status. Ex. 5 at 15. Curry did not contact any DBT provider for over 8 months and did not contact the Department from mid-July 2013 until January 2014. After renewing contact with the Department, Curry continued to tell the assigned social worker that she did not need or want DBT and failed to contact any DBT provider until nearly one month after the Department filed its petition for termination of her parental rights. And despite the court's order and the Department's repeated instructions to engage in individual therapy as required by all available DBT providers, Curry failed to begin individual counseling during the 16 months of the dependency. Under these circumstances, the record supports the court's findings that the Department expressly and understandably offered the mental health services Curry needed to address her parental deficiencies but she failed to avail herself of the services offered.

Moreover, even when the Department "inexcusably fails" to offer a necessary service, termination is still appropriate if the additional service would not have remedied the parent's deficiencies in the foreseeable future. In re Dependency of T.R., 108 Wn. App. 149, 163, 29 P.3d 1275 (2001); In re Welfare of Hall, 99 Wn .2d 842, 851, 664

P.2d 1245 (1983). Thus, if the record establishes that offering a service would have been futile, the trial court can make a finding that the State offered all reasonable services. In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008).

The record in this case amply demonstrates that additional referrals and alternative funding sources for private DBT providers would not have remedied Curry's parental deficiencies in the foreseeable future and would have been futile. Curry does not dispute the court's findings that she needed a minimum of 12 to 24 months of DBT to benefit her parenting skills and that L.B.S.P.'s near future was a period of less than 6 months. By the time of trial, despite Curry's claim that she was willing to participate in a DBT program, she had not yet even begun treatment with an individual therapist. Accordingly, Curry's challenge to the court's finding under RCW 13.34.180(1)(d) fails.[2] Affirmed.

_Jau, J._

WE CONCUR:

_Spearman, C.J._          _Cox, J._

---

[2] As Curry merely challenges the court's findings under RCW 13.34.180(1)(e)-(f) and .190 as premature to the extent the court erred in its finding under RCW 13.34.180(1)(d), we need not address her other assignments of error.